862 P.2d 215

**In the Matter of a Suspended Member of the State Bar of Arizona, Norman Alan SCHWARTZ, Respondent.**

No. SB–93–0061–D.
Comm. No. 92–0722.

Supreme Court of Arizona.

Nov. 12, 1993.

**456**

Margaret H. Downie, State Bar Counsel.

Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona.

**JUDGMENT AND ORDER**

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **NORMAN ALAN SCHWARTZ,** a suspended member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of six (6) months for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A, after which he may apply for reinstatement pursuant to Rule 71(c), Rules of the Supreme Court of Arizona. If, at the expiration of the six-month suspension term, Respondent is still on probation for the criminal charges underlying this sanction, his disciplinary suspension shall continue until his probation is terminated, after which he may apply for reinstatement pursuant to Rules 71 and 72, Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that Respondent shall comply with all applicable provisions of Rule 63, Rules of the Supreme Court of Arizona, and shall promptly inform this Court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that **NORMAN ALAN SCHWARTZ** shall pay the costs of these proceedings in the amount of $620.35.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION

OF THE

SUPREME COURT OF ARIZONA

In the Matter of NORMAN ALAN SCHWARTZ, a Suspended Member of the State Bar of Arizona, RESPONDENT.

Comm. No. 92–0722

*DISCIPLINARY COMMISSION REPORT*

Filed June 15, 1993.

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on April 17, 1993, for review of the record on appeal pursuant to Rule 53(d), R.Ariz.Sup.Ct. The Commission considered the Hearing Committee's recommendation of approval of the agreement for discipline by consent providing for suspension.

*Decision*

After review of the record on appeal, the Commission, by a concurrence of the seven Commissioners present,[1] adopts the Committee's recommendation that the agreement for discipline by consent be accepted, and recommends that Respondent be suspended for a period of six months, after which he may apply for reinstatement pursuant to Rule 71(c), Ariz.R.Sup.Ct. If, at the expiration of the six-month suspension term, Respondent is still on probation for the criminal charges underlying this sanction, his disciplinary suspension shall continue until his probation is terminated, after which he may apply for reinstatement pursuant to Rules 71 and 72, Ariz.R.Sup.Ct.

The Commission also unanimously adopts the Tender of Admissions and Agreement

**1.** Commissioners Goldsmith and Bonwell did not participate in these proceedings.

for Discipline by Consent and the Joint Memorandum in Support of Agreement for Discipline by Consent as its findings of fact and conclusions of law.

## Facts

During the period from early 1989 to 1990, Respondent placed and accepted small[2] and sporadic bets on professional football games. Respondent explains that, during this period, the state of Arizona had what was considered to be an ambiguous social gambling statute, which had been interpreted by the courts as allowing gambling as long as the proprietor/owner of the premises did not directly participate in the gambling profits. Accordingly, many establishments provided games such as craps and blackjack for their customers. According to Respondent, it was commonly believed that sports betting was no different than blackjack or craps, and would therefore fall under the protective umbrella of the social gambling statute. It was during the period that this statute was in effect that Respondent accepted a number of bets from a man whose losses totaled approximately $300 to $400 over an eight week period. Respondent later discovered that this man was a paid informant for the Maricopa County Attorney's Office.

Respondent has indicated that his bets were never operated as a business and were never conducted in any sort of organized major scale. "There were no records, no computer, no recordings of 'lines,' or bets, no collection procedures, no books, no aliases, ... no printed schedules or any other material,"[3] all of which were common practices of professional bookmakers.

In early 1990, a new social gambling statute went into effect, and, prior to his knowledge of any criminal investigation, Respondent voluntarily terminated his participation in any form of gambling in Arizona. However, in March 1991, Respondent was indicted for promotion of gambling, among other charges.

In June 1991, Respondent entered into a plea agreement with the Maricopa County Attorney wherein he pleaded guilty to conspiracy to commit promotion of gambling, which is a class 5 felony, non-dangerous and non-repetitive offense. Respondent was sentenced to three years' probation, commencing August 16, 1991; was ordered to pay fines and reimbursements totaling over $10,000; and was required to cooperate with the county attorney's office in the prosecution of certain other criminal defendants.

Respondent will be eligible to apply for early termination of his probation after serving one-half of the probationary term. At this time, it appears that no party will oppose this early termination.

Respondent and the State Bar agree that Respondent's conduct was in violation of ER 8.4(b) and Rule 51(a), Ariz.R.Sup.Ct.

## Discussion of Decision

■ The Committee and the Commission agree that, by committing a felony, Respondent violated ER 8.4(b) and Supreme Court Rule 51(a).

In determining the appropriate sanction, the Commission considered the American Bar Association's *Standards for Imposing Lawyer Sanctions* and prior decisions of the Court, both of which lead the Commission to conclude that suspension is the appropriate sanction.

While there are no cases directly on point in Arizona, cases with similar circumstances indicate that suspension is appropriate in this instance. In *In re Morris*, 164 Ariz. 391, 793 P.2d 544 (1990), a six-month retroactive suspension was imposed after the respondent's felony conviction of misprision of felony; in *In re Rivkind*, 164 Ariz. 154, 791 P.2d 1037 (1990), a two-year retroactive suspension and probation was imposed after the respondent's felony conviction of attempted possession of cocaine; and in *In re Alcorn*, Comm. No. 86–1388 (1988), the respondent was censured and placed on probation for his conviction of

---

**2.** Respondent states that his bets were in the neighborhood of $10 to $20.

**3.** Exhibit 2, p. 1, to Joint Memorandum in Support of Agreement for Discipline by Consent.

theft, a misdemeanor. Because Respondent's conduct was more egregious than Alcorn's, whose conduct constituted a misdemeanor rather than a felony, some period of suspension would seem proportionate. Although Respondent's conduct appears to be in balance with that of Morris and Rivkind, Respondent is willing to accept a suspension that, unlike *Morris* and *Rivkind,* is not retroactive; it would not go into effect until the Supreme Court issues its order of suspension.

The Standards indicate suspension is appropriate, as well. Standard 5.12 provides for suspension when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 [4] and that seriously adversely reflects on the lawyer's fitness to practice. Although Respondent indicates he believed that gambling on professional football games was no different than gambling on blackjack or craps, the county attorney's office did not agree. Respondent's poor judgment in this matter could affect his competency to practice law.

Standards 9.22 and 9.32 provide factors to be considered in aggravation and mitigation, respectively. While no aggravating factors exist, several factors in mitigation are present. Respondent has no prior disciplinary history in the over twenty years he has been admitted to practice in Arizona; he has been very cooperative with the State Bar in these disciplinary proceedings; he has an excellent reputation and character, as evidenced by the numerous letters of reference included in the record on appeal; he has expressed remorse for his conduct; and he has indicated his willingness to accept a disciplinary sanction, through the agreement for discipline by consent.

A respondent's felony conviction is governed by Rule 57(a), Ariz.R.Sup.Ct., which states "A lawyer shall be disciplined as the facts warrant upon conviction of ... any felony." While, at first blush, a six-month suspension may appear too light a sanction for conduct which resulted in a felony conviction, this recommendation is based upon the conduct, rather than on the conviction. Respondent's conviction arose from his non-compliance with a statute that was admittedly ambiguous; in fact, Respondent indicates that in 1990, the statute was amended to clarify many of those existing ambiguities that led to conduct such as his. Further, Respondent has been on interim suspension in connection with this matter since April 1992. The six-month suspension suggested by the agreement will not become effective until the Supreme Court issues a judgment and order of suspension. For all practical purposes, therefore, the suspension will be of a much greater duration than six months.

■ The purpose of lawyer discipline is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville,* 147 Ariz. 106, 708 P.2d 1297 (1985). It should deter similar conduct by other lawyers. *In re Fresquez,* 162 Ariz. 328, 783 P.2d 774 (1989). The Committee, the State Bar, and Respondent have all agreed that a six-month suspension is appropriate for the conduct at issue. A suspension of any longer duration would be disproportionate, in terms of both the conduct itself and the sanctions imposed in similar criminal convictions. The Commission notes that this recommendation is tempered with the condition that, should Respondent remain on probation at the end of the six-month suspension, the suspension shall continue as long as the probation is in effect, subjecting Respondent to the more stringent reinstatement provisions attendant with a suspension of more than six months. The Commission believes that this sanction will serve the purpose of lawyer discipline, and agrees with the Committee's recommenda-

---

**4.** Standard 5.11 lists intentional interference with the administration of justice; false swearing; misrepresentation; fraud; extortion; misappropriation; theft; the sale, distribution, or importation of controlled substances; the intentional killing of another; an attempt or conspir-acy or solicitation of another to commit any of these offenses; or intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

tion of acceptance of the agreement for discipline by consent.

/s/ RAYMOND W. BROWN
RAYMOND W. BROWN, Chair
Disciplinary Commission