891 P.2d 236

**In the Matter of a Member of the State Bar of Arizona, John E. SAVOY, Bar No. 000654, Respondent.**

No. SB–94–0088–D.
Comm. No. 93–0481.

Supreme Court of Arizona.

March 3, 1995.

J. Douglas McVay, Phoenix, for respondent.

Yigael M. Cohen, State Bar Counsel, Margaret H. Downie, Chief Bar Counsel, Phoenix, for State Bar of Arizona.

## JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **JOHN E. SAVOY**, a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of two years for conduct in violation of his duties and obligations as a lawyer. The imposition of that suspension shall be stayed pending the final outcome of the appeal process in Cause No. CR 90–13202, and should the conviction be reversed, the suspension shall be vacated and the case dismissed, as disclosed in the commission report attached hereto as Exhibit A.

The State Bar is directed to inform the Court when a decision has been rendered in the appeal and the Court will issue the appropriate order.

IT IS FURTHER ORDERED that **JOHN E. SAVOY** shall pay the costs of these proceedings in the amount of $1,865.58, together with interest at the legal rate from the date of this judgment.

## EXHIBIT A

### BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. No. 93–0481
In the Matter of
JOHN E. SAVOY,
Attorney No. 000654
a Member of the State
Bar of Arizona, Respondent.

## *DISCIPLINARY COMMISSION REPORT*

Filed Nov. 15, 1994.

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 15, 1994, for oral argument, pursuant to Rule 53(d), Ariz.R.S.Ct. The Commission considered the Hearing Committee's majority recommendation of suspension. Both the respondent and the State Bar filed objections to the Hearing Committee's recommendations.

### *Decision*

After consideration of the oral arguments and review of the record on appeal, the Com-

mission, with five members concurring and one dissenting,[1] adopts the Hearing Committee's majority recommendation that the respondent, John E. Savoy ("Savoy"), be suspended for a period of two years. The majority of the Commission also recommends that the imposition of that suspension be stayed pending the final outcome of the appeal process in the underlying case; should the conviction be reversed, the Commission recommends that the matter be dismissed.[2] Finally, the majority adopts the Hearing Committee majority's findings of facts and conclusions of law.

### Facts

On December 23, 1992, a jury found Savoy guilty of one count of perjury, based on a statement he made while testifying before the Arizona State Grand Jury in October 1990. Savoy was sentenced to two years' probation and was fined $15,000. That conviction was the sole basis of the complaint in this matter, which charged Savoy with violations of ER 3.3(a)(1), ER 8.4(b), ER 8.4(c), and ER 8.4(d), as well as Supreme Court Rule 51(a).

In his response to the formal complaint, Savoy admitted to the conviction of perjury, but denied his guilt. He stated that the statement to the Arizona State Grand Jury on which his perjury conviction was based was actually true.[3] He further stated that an appeal to that conviction was pending before the Arizona Court of Appeals. That appeal was still pending when this matter came before the Commission for oral argument.

Savoy's conviction of perjury is conclusive evidence of his guilt for the purposes of this discipline proceeding; the only issue to be dealt with is the extent of the discipline to be imposed. Rule 57(a)(3), Ariz.R.S.Ct. The Commission believes an explanation of the

events leading up to Savoy's conviction is necessary to determine the severity of the sanction warranted.

### BACKGROUND

Savoy represented Max Dunlap for many years in a number of mostly civil matters. In 1977, Dunlap, along with James Robison, was tried for the murder of reporter Don Bolles. The trial ended in a conviction, which was subsequently reversed by the Arizona Supreme Court. In 1990, during a resumed investigation of the Bolles murder, the Arizona Attorney General focused on funds passed during the 1977 trial from Savoy to David Derickson and then to James Robison's girlfriend. The theory of the investigation was that Savoy was acting on behalf of Dunlap and passing money to Robison's girlfriend to ensure that Robison did not testify or act against the interests of Max Dunlap.

As a result of that investigation, Savoy was served with a subpoena duces tecum for records in October 1990. Pursuant to that subpoena, Savoy was instructed to appear before the Grand Jury with, among other records, "any personal or law firm records of any kind reflecting: (a) monies received from or on behalf of Max Dunlap" between January 1, 1977, and December 31, 1979.

On October 29, 1990, Savoy went before the Grand Jury and testified that the funds delivered to Robison's girlfriend were from Robison and his father, not Max Dunlap, and that these funds were not intended as hush money. In addition, during the prosecutor's questioning of Savoy regarding the records he had brought with him in compliance with the subpoena duces tecum, the following exchange took place:

Q: Thank you. Item No. 3 is a number of items. For the period January 1, 1977, through December 31, 1979, any personal or law firm records of any

---

1. Commissioner McGrath dissented, in the belief that the Standards dictate that the respondent's perjury conviction result in disbarment. Commissioner McGrath concurs with the majority, however, in its recommendation that the matter be dismissed should the respondent be successful on appeal.

    Commissioners Dodge, Goldsmith, and Swick did not participate in these proceedings.

2. One member of the Committee recommended that Savoy be disbarred, but also recommended dismissal, should his conviction be overturned.

3. Savoy appears to have abandoned this argument by the time this matter reached the Commission.

kind reflecting items of money received from or on behalf of Max Dunlap. Have you brought anything in response to that item?

A: I did not. I have no records that far back.

Q: You have no records going back to 1979?

A: I do not.

Q: Would that be a blanket answer for everything in Item No. 3?

A: Yes.

Approximately two weeks after that testimony, Savoy's law offices were searched pursuant to a search warrant. During that search, records were discovered which concerned files and financial transactions Savoy had with Max Dunlap back to 1977. Savoy was subsequently charged with five counts of perjury based on his Grand Jury testimony. He was convicted on the count that pertained to his testimony that he had "no records that far back." He was acquitted on the remaining four counts, all of which related to his testimony on the source and purpose of the funds delivered to Robison's girlfriend.[4]

At trial, Savoy defended his testimony before the Grand Jury by stating that his answers referred only to his personal records. As he had no personal records which met the parameters outlined in the subpoena, he stated his answers were literally true. Apparently the determination of his guilt or innocence was a difficult one; in imposing no prison sentence on Savoy, the trial judge specifically noted that the determination of guilt was a close question.

### Discussion of Decision

The Commission finds that, by virtue of his conviction of perjury, Savoy violated a number of ethical rules. He violated ER 3.3(a)(1) by making a false statement of material fact to a tribunal; he violated ER 8.4(b) by committing a criminal act that re-

flects adversely on his honesty, trustworthiness, and/or fitness as a lawyer; he violated ER 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and he violated ER 8.4(d) by engaging in conduct prejudicial to the administration of justice. Finally, his conviction of a felony violated Supreme Court Rule 51(a).

The American Bar Association's *Standards for Imposing Lawyer Sanctions* are used by the Court in considering the appropriate sanction for a violation of the Rules of Professional Conduct. *In re Morris*, 164 Ariz. 391, 793 P.2d 544 (1990). The Committee and Commission are guided by the Standards, as well. While, at first glance, disbarment would appear to be the only appropriate outcome for a lawyer who commits perjury, the majority of the Commission finds that the circumstances that led to Savoy's conviction are highly unusual. It believes a careful review of the Standards, including those factors present in aggravation and mitigation, indicate that suspension is appropriate here.

Standard 5.11, addressing failure to maintain personal integrity, provides for disbarment when a lawyer engages in serious criminal conduct, a necessary element of which includes, among other things, intentional interference with the administration of justice, false swearing, or misrepresentation. Standard 5.11 also indicates disbarment is warranted when a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. By definition, perjury involves the intentional interference with the administration of justice, false swearing, misrepresentation, dishonesty, and deceit. Absent other considerations, then, disbarment is appropriate under this Standard.

Disbarment is not as clearly indicated by Standard 6.1, which relates directly to perjury. Standard 6.11 provides for disbarment when a lawyer, with the intent to deceive the court, makes a false statement, submits a

---

4. The Hearing Committee expressed frustration that the State Bar chose to charge only the issue on which Savoy was eventually convicted, rather than including those issues relating to the four additional counts on which he was acquitted.

The Commission, however, accepts the State Bar's position that its limited resources made it imprudent to pursue an issue which the Attorney General had already prosecuted unsuccessfully.

false document, or improperly withholds material information, *and* causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding. While Savoy's conviction of perjury indicates that he made a false statement with the intent to deceive the court, the majority of the Commission agrees with the Committee majority's finding that no clear and convincing evidence was presented to show that the perjury resulted in serious or potentially serious harm, as required by this Standard.

Standards 9.2 and 9.3 list factors to be considered in aggravation and mitigation, respectively. In mitigation, the majority of the Commission agrees with the majority of the Committee in finding full and free disclosure to the disciplinary board or cooperative attitude toward these proceedings, remoteness of prior offenses,[5] and no dishonest or selfish motive.[6] In addition, two superior court judges, one appellate judge, and two lawyers testified before the Committee. Each testified that he has known Savoy for over fifteen years, and that Savoy enjoys an excellent reputation in the legal community and has a good reputation for truthfulness both in court and with other lawyers. The Committee and Commission also considered one additional factor concerning Savoy's cooperation which is not one of the factors listed in the ABA Standards: after his conviction, Savoy promptly contacted his current clients to notify them that they might need substituted counsel. Finally, the Commission notes that Standard 9.32 also lists the "imposition of other penalties or sanctions" as a mitigating factor and finds the probation and fine imposed on Savoy as further mitigation. The dissenting member of the Committee found no mitigating factors.

That dissenting member also disagreed with the majority concerning the aggravation

present. The dissenting Committee member found as aggravation the testimony that Savoy hindered the investigation of two prosecutors in the Don Bolles murder; however, the majority of the Committee and Commission rejected this as an aggravating factor, as those prosecutors admitted their opinion was based solely on the grounds and the charges of which Savoy was acquitted. The State Bar also presented Savoy's over forty years of experience in practicing law as an aggravating circumstance, but the Committee majority rejected this as aggravation. It believes this factor applies only when the misconduct would be less likely to occur the more experienced a lawyer becomes; but every lawyer is expected to be truthful, regardless of the length of time he has practiced. The majority of the Commission agrees with the Committee's finding that there are no aggravating factors.

Savoy was convicted of breaching one of the most fundamental and important of all obligations held by a lawyer. The community expects lawyers to exhibit the highest standards of honesty and integrity, and refrain from conduct involving dishonesty, fraud, or interference with the administration of justice.[7] In addition, lawyers must always operate within the bounds of the law, and cannot use false evidence or engage in any other illegal or improper conduct.[8] Savoy's conviction of perjury is a very serious matter, indeed, and, as stated above, one that should result in disbarment in most cases.

In this instance, however, the majority of the Commission believes the circumstances are unusual. Savoy testified that his failure to fully comply with the subpoena duces tecum was unintentional. He stated that the reason he did not initially bring to the Grand Jury all of his documents relating to Max Dunlap was that he understood, based on conversations he had with the special agent who served the subpoena duces tecum on

---

**5.** Although Savoy was informally reprimanded in 1982, the Commission, Committee, and the State Bar all agree that this sanction was too remote in time and nature to be considered in any manner here.

**6.** The majority of the Commission agrees with the Committee majority that dishonest conduct does not necessarily result from a dishonest mo-

tive; it agrees that the State Bar did not prove a dishonest or selfish motive.

**7.** Theoretical Framework to the ABA Standards, p. 5

**8.** *Id.*

him, that despite what it said on its face, the subpoena had been issued to elicit records relating to Dunlap's criminal action, not those relating to civil matters Savoy had with Dunlap. Even the judge who imposed the sentence on Savoy noted that the determination of Savoy's guilt was a "close question." The Commission recognizes that, pursuant to Rule 57(a)(3), it is bound by Savoy's conviction of perjury. However, upon review of the record on appeal, the majority of the Commission agrees that his guilt was a very close question. That finding is just one of the circumstances that supports a sanction less than disbarment.

In further support of the special circumstances present in this matter, the Commission notes that, while one Standard indicates disbarment is warranted, another does not. In addition, while no aggravating factors were found by the majority, there were many mitigating factors found which, as the Standards indicate, may justify a reduction in the degree of discipline to be imposed.[9]

 As the Court has reiterated many times, the purpose of lawyer discipline is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). It seems apparent that Savoy is not considered a danger to the public. The Supreme Court granted Savoy's motion to stay the automatic suspension generally imposed when a lawyer is convicted of a felony,[10] and the court that found Savoy guilty of perjury sentenced him with only probation and a fine, rather than the prison sentence which could have resulted. The majority of the Commission does not believe the public will be harmed by Savoy's return to the practice of law after only two years, rather than after the five year hiatus required by disbarment.

While the Commission believes one of its duties is to provide the public with a basis for confidence in the integrity of the bar, it also believes it has a responsibility to show fairness to the respondent. Savoy has already been publicly reprimanded for his misconduct, and he will forever experience the stigma that is attached to any criminal conviction, especially one connected with a case as public as the Bolles murder. In Savoy's over forty years of practicing law, this incident is virtually the only stain on an otherwise excellent reputation. A suspension of any length, particularly for an older lawyer such as Savoy, is a severe sanction and will most likely create an extreme hardship for the respondent. While the Commission has great concerns about a lawyer committing perjury, it believes that, in this instance, disbarment would be merely punitive. The majority finds that, if Savoy's conviction is upheld, a two-year suspension will best serve the purpose of lawyer discipline.

/s/ Mark D. Rubin
Mark D. Rubin, Chairman
Disciplinary Commission

---

9. Standard 9.31

10. Rule 57(b), Ariz.R.S.Ct.