25 P.3d 710

**In the Matter of a Member of the State Bar of Arizona, William L. SCHOLL, Bar No. 003965, Respondent.**

No. SB–00–0085–D.

Supreme Court of Arizona.

April 18, 2001.

State Bar of Arizona, by Jacqueline N. Schesnol, Phoenix, Attorney for State Bar.

D. Jesse Smith, Tucson, Attorney for Respondent.

## OPINION

JONES, Vice Chief Justice.

## I. Introduction

¶ 1 William L. Scholl was admitted to the Arizona State Bar on October 5, 1974. He served as a Judge Pro Tempore at the Pima County Superior Court commencing in 1984 and, in July 1985, was formally appointed to the Superior Court bench. Judge Scholl developed a gambling habit and, for several years, did not accurately report winnings and losses on his federal income tax returns. On November 19, 1996, he was convicted in federal court of seven felony offenses: four counts of filing false tax returns for the years 1990, 1991, 1992 and 1994, in violation of 26 U.S.C. § 7206(1), and three counts of structuring currency transactions to avoid treasury reporting requirements in violation of 31 U.S.C. § 5324. Each conviction included the elements of knowledge of and intent to violate the law. He was sentenced to probation with several conditions.[1]

¶ 2 Scholl was a judge, not a practicing lawyer, at the time of these offenses. He resigned from the bench shortly after the convictions were announced. The Ninth Circuit later upheld the convictions and the U.S. Supreme Court denied certiorari. U.S. v. Scholl, 166 F.3d 964 (9th Cir.1999), cert. denied, 528 U.S. 873, 120 S.Ct. 176, 145 L.Ed.2d 149 (1999). Proceedings against Judge Scholl before the Commission on Judicial Conduct, the body authorized to impose discipline in cases involving misconduct by judges, were rendered moot when Judge Scholl resigned from the bench.

¶ 3 Following his resignation, Scholl filed in this court a Motion For Stay of Automatic Suspension from the practice of law. See Ariz. R. Sup.Ct. 57(b). We granted the Motion for Stay pending institution of formal State Bar disciplinary proceedings arising from the convictions. We thus permitted Scholl to continue practicing law but imposed significant restrictions on his practice.[2] Our Order was entered without prejudice to the right of the State Bar to seek interim suspension during the course of the disciplinary proceedings. Subsequently, the State Bar filed a Motion for Interim Suspension. We denied the Motion pending Bar disciplinary action, in part to provide a complete record for this court to consider in the event of formal judicial review of the matter.

¶ 4 The State Bar initiated disciplinary proceedings against Scholl on January 29, 1999, citing his felony convictions and seeking disbarment. The facts and resulting convictions were considered. In addition, several witnesses testified favorably to Scholl's fitness as a lawyer. The Hearing Officer recommended censure, probation, and payment of costs, whereas, on review, a divided Disciplinary Commission ("the Commission") rejected the Hearing Officer's recommendation for censure and suspended Scholl from practice for two years. The dissenting mem-

---

1. Scholl was placed on home arrest for six months and probation for five years. He was ordered to pay a special assessment of $350.00, ordered to pay the costs of prosecution and of the home arrest, prohibited from gambling, prohibited from entering into financial contracts or incurring obligations without prior approval of his probation officer, required to participate in a mental health program to address his gambling addiction, and ordered to perform 500 hours of community service.

2. Scholl was required to comply with all conditions of his federal probation, disclose his convictions and bar disciplinary status to employers and clients, practice only in association with others and under the supervision of a practice monitor, have no access to client funds or trust accounts, and refrain from all gambling activity.

bers, voicing a number of valid concerns, argued the two-year suspension was unnecessary and essentially punitive.

¶ 5 Neither Scholl nor the State Bar filed a petition challenging the Commission's recommendation. We considered the Hearing Officer's recommendation as well as the Commission's Report and granted review *sua sponte*. We have jurisdiction pursuant to Rules 46(a) and 53(e)(7), Ariz. R. Sup.Ct., and Ariz. Const. art. 6, § 5(3).

## II. Issue Presented

¶ 6 "A lawyer shall be disciplined as the facts warrant upon conviction ... of any felony." Ariz. R. Sup.Ct. 57(a). Under this rule, proof of conviction is conclusive evidence of the underlying criminal offense. Ariz. R. Sup.Ct. 57(a)(3). Here, Scholl was convicted of seven felonies, all warranting some measure of discipline. Therefore, the issue is whether the two-year suspension imposed by the Commission is justified on the record before us.

¶ 7 In reviewing findings of fact, we adopt those findings unless we deem them clearly erroneous. Ariz. R. Sup.Ct. 53(e)(11). The burden is on the Bar to prove by clear and convincing evidence that the discipline imposed is appropriate. Ariz. R. Sup.Ct. 54(c); (d); *In re Fioramonti*, 176 Ariz. 182, 187, 859 P.2d 1315, 1320 (1993).

## III. Discussion

¶ 8 Responsibility to determine the appropriateness of lawyer discipline requires examination of the purposes to be served by the rules. The stated objectives of disciplinary proceedings are: (1) maintenance of the integrity of the profession in the eyes of the public, (2) protection of the public from unethical or incompetent lawyers, and (3) deterrence of other lawyers from engaging in illegal or unprofessional conduct. *In re Murray*, 159 Ariz. 280, 282, 767 P.2d 1, 3 (1988). Additionally, we view discipline as assisting, if possible, in the rehabilitation of an errant lawyer. *In re Hoover*, 155 Ariz. 192, 197, 745 P.2d 939, 944 (1987). The object of disciplinary proceedings is not to punish. *In re Pappas*, 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988). Punishment in this case was carried out by the federal criminal justice system.

¶ 9 The Commission utilizes the American Bar Association's STANDARDS FOR IMPOSING LAWYER SANCTIONS (1992) ("ABA STANDARDS") as a guide in determining the proper extent of discipline in a given case. *In re Kaplan*, 179 Ariz. 175, 177, 877 P.2d 274, 276 (1994). This court, as well, views the ABA STANDARDS as a suitable guideline. *See, e.g., In re Spear*, 160 Ariz. 545, 554–55, 774 P.2d 1335, 1344–45 (1989). The ABA Standards suggest that we assess various factors: (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. ABA STANDARDS, Standard 3.0.

¶ 10 We do not consider the nature of the lawyer's practice, the effect on the lawyer's livelihood, or the level of pain inflicted when determining the appropriate sanction. *In re Shannon*, 179 Ariz. 52, 71, 876 P.2d 548, 567 (1994).

### A. Duty Violated and the Potential Injury

¶ 11 Scholl's convictions demonstrate unquestionably a violation of Ethical Rule 8.4(b) of the Rules of Professional Conduct, which provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Here, Judge Scholl's actions reflected on vital aspects of honesty, trustworthiness, and fitness.

¶ 12 Despite the duty violated, no evidence was offered to suggest that Scholl's activities resulted in harm, either to clients, other lawyers, or other judges. Moreover, although Scholl faced criminal sanctions for filing false tax returns and structuring currency transactions, the Internal Revenue Service was not harmed because no taxes were evaded, no back taxes were found due, and no tax penalties were imposed.

¶ 13 The Commission cited *In re Wines*, 135 Ariz. 203, 660 P.2d 454 (1983), which discusses the appropriate disciplinary weight

due in a case in which the lawyer's client is not harmed. There, a lawyer pled guilty to tax evasion and was given a five-year suspension. There was no harm to Wines' client. However, the court stated, "[w]e cannot accept the contention that since [the lawyer's] acts did not damage his clients the public therefore needs no protection and only minimal discipline is appropriate." *Id.* at 208, 660 P.2d at 459. The *Wines* court saw no distinction, for purposes of imposing discipline, between dishonesty toward a client and dishonesty toward the government. "Cheating one's client and defrauding the government are reprehensible in equal degrees." *Id.; see also In re Spear,* 160 Ariz. at 555, 774 P.2d at 1345 (the ABA Standards demand "neither injury nor potential injury to a specific client").

¶ 14 The Commission acknowledged the absence of harm to any of Scholl's clients but concluded that his convictions caused harm to the public, the justice system, and the legal profession. The Commission maintains that harm resulted from the public resources and time expended in prosecuting Scholl. It further contends that Scholl's convictions compromised the integrity of the legal profession and harmed the community and state by engendering a loss of public confidence in the profession responsible to uphold the law. *See In re Horwitz,* 180 Ariz. 20, 24, 881 P.2d 352, 356 (1994) ("[T]he public has a right to expect that lawyers will, in general, live as law-abiding citizens.").

¶ 15 We may never know the precise impact of Scholl's convictions on public confidence in the Bar as a whole. We do know that his transgressions were widely publicized and that the public does not look favorably upon lawyers or judges convicted of federal income tax offenses. We acknowledge, however, that Scholl has practiced law without incident since his resignation from the bench and that there is no indication that a client or anyone else has been or will be harmed by him.

¶ 16 Yet, to protect the integrity of the legal profession and foster public confidence, lawyers must not show any form of habitual disrespect for the law. *See* ER 8.4 cmt. ("A

pattern of repeated offenses ... can indicate indifference to legal obligation.").

## B. Lawyer's Mental State

¶ 17 Scholl's convictions involve specific intent to commit crimes involving dishonesty. The elements of the crime of filing a false tax return are:

(1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter;

(2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury;

(3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

(4) the defendant falsely subscribed to the return, statement, or other document **willfully, with the specific intent to violate the law.**

*Scholl,* 166 F.3d at 980 (emphasis added) (construing 26 U.S.C. § 7206(1)).

¶ 18 Similarly, the crime of structuring a currency transaction to avoid treasury reporting requirements requires that the defendant:

(1) **intentionally** structure financial transactions,

(2) **with the purpose** of avoiding the currency reporting requirements, and

(3) **with the knowledge** that the conduct is unlawful.

*Scholl,* 166 F.3d at 979 (emphasis added) (construing 31 U.S.C. § 5324).

¶ 19 Judge Scholl's convictions were determinative of his mental state, and each criminal element was proven beyond a reasonable doubt. Accordingly, we do not overlook the significance of Scholl's specific intent and knowledge as proven elements in each of the seven convictions.

## C. Aggravation and Mitigation

¶ 20 ABA Standards 5.11 and 5.12 describe generally appropriate sanctions for certain violations. Both standards set forth only general recommendations, however, and

the proper sanction in any given case requires consideration of all relevant aggravating and mitigating factors. *See* ABA STANDARDS, Standard 9.1; *see also Horwitz,* 180 Ariz. at 25, 881 P.2d at 357 (citing *Fioramonti,* 176 Ariz. at 188, 859 P.2d at 1321).

¶ 21 ABA Standard 5.11, involving, as here, violations of duties owed to the public, provides:

> Disbarment is generally appropriate when:
>
> (a) a lawyer engages in serious criminal conduct a necessary element of which includes ... misrepresentation [or] fraud ...; or
>
> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA STANDARDS, Standard 5.11. Here, Scholl's convictions were for violations requiring proof of specific intent to commit criminal acts involving dishonesty and misrepresentation. An element of filing false tax returns is that "the defendant falsely subscribed the return, statement, or other document willfully, with the specific intent to violate the law." *Scholl,* 166 F.3d at 980.

¶ 22 Similarly, the elements of structuring currency deposits include intentionally structuring financial transactions with the purpose of avoiding the currency reporting requirements and with knowledge that the conduct is unlawful. *Id.* at 979. Scholl's specific intent and knowledge were proven beyond a reasonable doubt. Accordingly, disbarment, though not imposed on Judge Scholl, was an approved sanction.

¶ 23 ABA Standard 9.32 enumerates several mitigating factors which may justify a reduction in the discipline imposed. The Hearing Officer found six such factors: (1) absence of a prior disciplinary record, (2) imposition of other penalties or sanctions, (3) full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings, (4) character and reputation, (5) absence of a dishonest or selfish motive, and (6) interim rehabilitation. The Commission agreed with the first four.

¶ 24 Michael C. Brubaker, a nationally certified gambling counselor, performed psychological testing on Scholl which led to a diagnosis that Scholl was a compulsive or pathological gambler under § 312.21 of the diagnostic criteria set forth in the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM–IV"). Brubaker testified that Scholl received treatment for his addiction in an intensive outpatient program with follow-up care for about a year. Brubaker opined that Scholl is now fit to practice law. Based on Brubaker's testimony, the Hearing Officer concluded that Scholl's convictions were, at least in part, "attributable to his gambling addiction." Hearing Officer's Report at 12.

■ ¶ 25 The Commission normally gives great deference to the Hearing Officer's recommendations. *In re Petrie,* 154 Ariz. 295, 297, 742 P.2d 796, 798 (1987). But here, it differed with Brubaker and did not find significant mitigation because it did not find a sufficient causal nexus between the addiction and the offenses committed. At best, the record evidences disagreement about the role Scholl's addiction should play as a mitigating factor in his discipline.

¶ 26 The Commission acknowledged that Scholl had a gambling addiction and searched appropriately for a link between the addiction and the offense. A comment to ABA Standard 9.32 states that "[d]irect causation between the disability ... and the offense must be established." *See* ABA STANDARDS, Standard 9.32 cmt. The Commission determined that the addiction was not the cause of the dishonesty that resulted in Scholl's felony convictions and noted that the Hearing Officer, significantly, did not refer to ABA Standards 9.32(c) (personal or emotional problems), 9.32(h) (physical disability), or 9.32(i) (mental disability) to mitigate the misconduct to the Hearing Officer's recommended sanction of censure.

¶ 27 Because the Commission could find no causal connection in the Hearing Officer's report or in Brubaker's opinion, it gave the gambling addiction little, if any, weight as a mitigating factor. We agree. While we do not know whether Scholl's decisions to sign and file false income tax returns would have

occurred in the absence of the addiction, we do know they were separate decisions that can stand alone, and they were repeated annually over the course of several years.

¶ 28 The ABA Standards specifically discuss the appropriateness of suspension as a sanction.

> Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

ABA STANDARDS, Standard 5.12. The commentary to Standard 5.12 sheds light on the conduct the drafters had in mind:

> Lawyers who engage in criminal conduct other than that described above in Standard 5.11 should be suspended in cases where their conduct seriously adversely reflects on their fitness to practice.... Not every lawyer who commits a criminal act should be suspended, however. As pointed out in the Model Rules of Professional Conduct:
>
>> Although a lawyer is personally answerable to the entire criminal law, **a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice.** Offenses involving violence, **dishonesty,** or breach of trust, or serious interference with the administration of justice are in that category.

ABA STANDARDS, Standard 5.12 cmt. (emphasis added) (quoting MODEL RULES OF PROF'L CONDUCT R. 8.4 cmt.). The Hearing Officer and the Commission majority differed on the appropriate sanction, and the Commission ultimately imposed the two-year suspension. We conclude under ABA Standard 5.12 that while Judge Scholl's conduct and the criminal convictions that followed present a case serious enough to warrant suspension, we must nevertheless determine whether on this record the two-year suspension is justified.

### D. Purpose of Professional Discipline

¶ 29 The purpose of professional discipline is twofold: (1) to protect the public, the legal profession, and the justice system, and (2) to deter others from engaging in misconduct. *In re Neville,* 147 Ariz. 106, 116, 708 P.2d 1297, 1307 (1985); *In re Swartz,* 141 Ariz. 266, 277, 686 P.2d 1236, 1247 (1984). Public confidence in the State Bar is vital. *See In re Loftus,* 171 Ariz. 672, 675, 832 P.2d 689, 692 (1992).

¶ 30 Nonetheless, the Commission's duty to assure public confidence is met with the concomitant responsibility to show fairness to Scholl. *See In re Savoy,* 181 Ariz. 368, 372, 891 P.2d 236, 240 (1995) (the sanction must be fair and appropriate to the infraction). Here, Scholl is already required by the terms of this court's prior order to inform his clients of the felony convictions. *See supra* note 2. In addition, Scholl's conduct is also restricted by the terms of his five-year criminal probation. *See supra* note 1.

¶ 31 Consequently, while the Commission is attempting to advance a valid objective, we are not persuaded that a suspension of two years is necessary.

### E. Proportionality

¶ 32 To achieve proportionality, discipline must be tailored to the facts of each case. *In re Wolfram,* 174 Ariz. 49, 59, 847 P.2d 94, 104 (1993). In determining the appropriate sanction, this court assesses proportionality by reference to precedent. *In re Struthers,* 179 Ariz. 216, 226, 877 P.2d 789, 799 (1994); *In re Levine,* 174 Ariz. 146, 174–75, 847 P.2d 1093, 1121–22 (1993).

¶ 33 The Commission relied on two cases to justify Scholl's two-year suspension. In *In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990), a lawyer was suspended for two years followed by probation for two years for a felony conviction of narcotics possession with significant mitigation present. The Commission noted that Rivkind's conviction did not involve dishonesty and that a clear link existed between Rivkind's drug addiction and his crime.

¶ 34 The Commission also cited *In re Wines* for support. 135 Ariz. at 203, 660 P.2d at 454. There, the lawyer was suspended for five years for attempting to evade income taxes by failing to file tax information

and understating his law practice gross income. Scholl's case was distinguished by the fact that Wines had prior disciplinary offenses and no mitigating factors. The Commission, applying Wines and *Rivkind,* concluded that the appropriate sanction for Scholl's offense fell closer to *Rivkind.* We do not disagree.

¶ 35 The *Rivkind* opinion, however, contains a passage which we find significant. While discussing whether the disciplinary rules require disbarment upon conviction of any felony, the court wrote:

> We must tailor the discipline in each case to its facts. ... The circumstances in which the misconduct occurred or subsequent efforts at rehabilitation or contrition may indicate that the conduct is not likely to recur and that disbarment would be excessive. At times, other remedies, such as a closely supervised probation, might adequately protect the public so that a harsher discipline would become purely vindictive and punitive.

*Rivkind,* 164 Ariz. at 159, 791 P.2d at 1042.

¶ 36 We believe the Hearing Officer's analysis of Scholl's circumstances is more consistent with the analysis envisioned by the *Rivkind* court. Scholl's rehabilitation has been witnessed and attested to by judges, lawyers, and mental health professionals. Indeed, the Hearing Officer's report cites cases where more limited suspension was imposed after a lawyer was criminally convicted. In *In re Morris,* 164 Ariz. 391, 793 P.2d 544 (1990), the lawyer pled guilty to misprision of a felony. The lawyer was given interim suspension from practice. The Disciplinary Commission then consulted ABA Standard 5.1 and recommended a six-month suspension *retroactive* to the date of the lawyer's interim suspension. Similarly, in *In re Schwartz,* 176 Ariz. 455, 862 P.2d 215 (1993), the lawyer entered a guilty plea to the crime of conspiracy to promote illegal gambling. The lawyer consented to a six-month *prospective* suspension, and the Commission imposed the suspension because the lawyer consented, even though it found the lawyer's conduct "in balance with that of *Morris* and *Rivkind.*" *Id.* at 458, 862 P.2d at 218.

¶ 37 Here, Scholl violated 26 U.S.C. § 7206(1) by failing to report all income attributable to legal gambling. There are several ways to violate this statute. Scholl's wrongful act occurred each time he netted his losses against his winnings and simply reported the net winnings. He was required by law to report *all* winnings, against which he could then claim the losses as a deduction.

¶ 38 Similarly, Scholl's other crime, structuring currency transactions, is not inevitably nefarious. There are occasions on which a person, without violating the law, may structure currency transactions. *Ratzlaf v. United States,* 510 U.S. 135, 144, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). In Scholl's case, however, both the reporting and the structuring violations resulted in jury verdicts that necessarily established intentional and knowing dishonest conduct.

¶ 39 Scholl's seven felony convictions and the absolute need to maintain trust in the legal profession are juxtaposed against the considerations earlier noted: (1) Scholl has thus far been restricted by our prior Order and his criminal sentence, (2) the mitigating factors suggested by the ABA STANDARDS are substantial, (3) Scholl is fit to practice law, and (4) the deterrent effect from further sanctions is questionable.

## IV. Conclusion

¶ 40 On balance, Scholl's crimes and the aggravating and mitigating factors in this record lead us to conclude that imposition of a two-year suspension by the Disciplinary Commission is excessive and fails to address Scholl's apparently successful effort to rehabilitate himself. The possibility that his conduct will recur is scant. Nevertheless, because Scholl was convicted of crimes involving knowing acts of dishonesty, committed with the intent to violate the law, we are unable to conclude that the Hearing Officer's censure recommendation is sufficient. We find that the appropriate sanction is a six-month suspension, prospective from the date of this opinion. During the suspension, Scholl shall refrain from the practice of law entirely and shall so notify all current clients within ten days of receipt of this opinion. Upon the conclusion of the six-

month suspension, Scholl shall be eligible for automatic reinstatement as a member of the State Bar.

CONCURRING: FREDERICK J. MARTONE, Justice, RUTH V. MCGREGOR, Justice.

Chief Justice ZLAKET and Justice FELDMAN are recused and therefore did not participate in the determination of this matter.