SUPREME COURT OF ARIZONA
In Division

| | |
|---|---|
| In the Matter of a Member of the State Bar of Arizona, | ) Arizona Supreme Court<br>) No. SB-08-0119-D<br>) |
| JANET L. WHITE-STEINER,<br>Attorney No. 14295 | ) Disciplinary Commission<br>) No. 06-0796<br>)<br>) |
| | )<br>) |
| Respondent. | )<br>) |
| | ) **O P I N I O N**<br>) |
| _____ | ) |


Review from the Disciplinary Commission
No. 06-0796 (Filed May 19, 2008)

**VACATED IN PART; DISCIPLINE IMPOSED**
_____

JENNINGS, STROUSS & SALMON, P.L.C.                    Phoenix
     By   J. Scott Rhodes
Attorneys for Janet L. White-Steiner

STATE BAR OF ARIZONA                                  Phoenix
     By   Patricia J. Ramirez
Attorney for the State Bar of Arizona
_____

**B A L E S**, Justice

¶ 1      In reviewing attorney discipline cases, the Disciplinary Commission must accept a hearing officer's factual findings if they have any reasonable basis. Because the Commission here did not defer to the Hearing Officer's finding that the attorney acted negligently, we decline to impose the Commission's recommended sanction of suspension, and instead

order censure and two years probation on the terms recommended by the Hearing Officer.

## I. FACTS AND PROCEDURAL BACKGROUND

¶ 2      Respondent Janet White-Steiner was admitted to practice law in Arizona in 1992.  She and her husband, Richard Steiner, are the sole partners in Steiner & Steiner, P.C., a law firm that also employs an associate and a paralegal.  Mr. Steiner spends half or more of his time in Colorado, where he is also licensed to practice law.  When he is in Colorado, White-Steiner oversees the firm's Arizona office.

¶ 3      In May 2006, the State Bar learned that the firm's trust account had been overdrawn by $44.27.  The State Bar asked White-Steiner, the only lawyer registered on the account, to explain this event.  The State Bar made several follow-up inquiries and, over the next several months, received responses in letters signed by White-Steiner, in a letter from Mr. Steiner, and at a meeting with Mr. Steiner and the firm's paralegal.

¶ 4      The State Bar's investigation revealed deficiencies in the firm's trust accounting practices.  The firm used a credit card account, which was not a trust account, to receive both client funds and earned fees.  The firm would transfer the entire amount of certain client credit card payments to a

2

separate trust account for later disbursement. The firm overlooked, however, that the bank was deducting administrative fees from the credit card receipts. By not depositing personal funds into the credit card account to pay these fees and inaccurately reflecting amounts held in the trust account, as well as disbursing amounts from the trust account that were not collected funds, the firm co-mingled and converted client funds. The State Bar's investigation further established that the law firm had not completed monthly three-way reconciliations of the trust account, properly accounted for credit card transaction fees charged on retainers, maintained accurate client ledgers, or deposited sufficient personal funds in the trust account to pay bank fees and charges.

¶ 5     The State Bar filed a formal complaint against White-Steiner, who responded by admitting all but three of the State Bar's allegations. At the disciplinary hearing, the State Bar learned that Mr. Steiner had drafted all the written responses to its inquiries. Mr. Steiner also had prepared the answer to the complaint for White-Steiner. At the hearing, White-Steiner asserted for the first time that Mr. Steiner, and not she, was responsible for maintaining the law firm's trust account.

¶ 6     The Hearing Officer found that White-Steiner was a party responsible for the maintenance of the law firm's trust

3

account even though she had relied on Mr. Steiner to oversee the account, to ensure its procedures complied with applicable rules, and to respond to the State Bar's investigation. The Hearing Officer further concluded that White-Steiner had violated ERs 1.15(a), 5.1, and 5.3, and Supreme Court Rules 43 and 44 by improperly dealing with client trust accounts and failing to supervise those responsible for maintaining the firm's trust accounts.[1] The Hearing Officer did not find, however, that White-Steiner had violated ER 8.1 and Arizona Supreme Court Rule 53(f) by failing to disclose earlier to the State Bar that Mr. Steiner was the responsible party or that he had prepared the responses to the State Bar inquiries and the answer to the formal complaint.

¶ 7    As a sanction, the Hearing Officer recommended censure and two years probation, including participation in the State Bar's Law Office Management Assistance Program (LOMAP) and trust account programs, because he found that White-Steiner acted negligently, was not motivated by dishonesty or selfishness, and had a strong character and reputation in the legal community. The State Bar appealed to the Disciplinary Commission, which

---

[1]    Both the Hearing Officer's Report, *In re White-Steiner*, No. 06-0796 (Mar. 3, 2008), and the Disciplinary Commission's Report, *In re White-Steiner*, No. 06-0796 (May 19, 2008), are available at http://supreme.state.az.us/dc/matrix.htm.

4

agreed with the Hearing Officer's findings with respect to White-Steiner's ethical violations and the aggravating and mitigating circumstances, but rejected the Hearing Officer's finding that White-Steiner had acted negligently. The Disciplinary Commission instead determined that White-Steiner knew or should have known that her conduct was improper, and therefore recommended suspension for six months and one day as the appropriate sanction.

¶ **8** White-Steiner petitioned this Court for review of the Commission's recommended sanction. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Supreme Court Rule 59(a).

## II. DISCUSSION

¶ **9** Attorney discipline serves to protect the public, the legal profession, and the legal system, and to deter other attorneys from engaging in unprofessional conduct. *In re Scholl*, 200 Ariz. 222, 227 ¶ 29, 25 P.3d 710, 715 (2001). Punishing the offending attorney is not the intended purpose, but may be the incidental effect, of such discipline. *Id.* at 224 ¶ 8, 25 P.3d at 712.

¶ **10** White-Steiner does not challenge the conclusion that she violated ERs 1.15(a), 5.1, and 5.3, and Supreme Court Rules 43 and 44. The issue before us is the appropriate sanction.

5

**A.      Sanctions**

¶ 11      We consider the following factors in determining appropriate sanctions: (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the lawyer's conduct, and (4) the existence of aggravating or mitigating factors.  *See American Bar Association Standards for Imposing Lawyer Discipline* 3.0 (1992) ("*ABA Standards*"); *In re Peasley*, 208 Ariz. 27, 32-33 ¶¶ 19, 23, 90 P.3d 764, 769-70 (2004). We address each factor in turn.

**1.      Duty Violated**

¶ 12      The Hearing Officer and the Commission found that White-Steiner improperly dealt with client funds and improperly managed her client trust account, in violation of ER 1.15(a) and Arizona Supreme Court Rules 43 and 44, and that she failed to make reasonable efforts to ensure that the firm had in effect measures giving reasonable assurance that all lawyers in the firm conformed to the Rules of Professional Conduct and that all non-lawyer assistants' conduct was compatible with White-Steiner's professional obligations, in violation of ERs 5.1 and 5.3.  These conclusions are not disputed before this Court. Thus, White-Steiner breached duties owed to her clients to maintain and safeguard their property.  *See* ABA Standard 4.1.

### 2. Mental State

¶ 13     A lawyer's mental state affects the sanction imposed for ethical violations.  Because intentional or knowing conduct threatens more harm than does negligent conduct, it is sanctioned more severely.  The Hearing Officer found White-Steiner negligent in dealing with client property.  The Disciplinary Commission disagreed, concluding that White-Steiner knew or should have known that her conduct was improper because she was "on notice" due to prior disciplinary actions involving "similar misconduct."

¶ 14     A lawyer's mental state is a fact question.  *In re Van Dox,* 214 Ariz. 300, 304 ¶ 14, 152 P.3d 1183, 1187 (2007).  In disciplinary proceedings, the Commission must give "great deference" to a hearing officer's factual findings and may not reject them unless they are clearly erroneous.  *Id.* ¶ 15.  "To be clearly erroneous, a finding must be unsupported by any reasonable evidence."  *Id.*  The Commission may not simply substitute its judgment for the hearing officer's or independently make additional fact findings. Ariz. R. Sup. Ct. 58(b); *see also In re Tocco*, 194 Ariz. 453, 456 ¶ 9, 984 P.2d 539, 542 (1999).

¶ 15     We must therefore consider whether reasonable evidence supported the Hearing Officer's finding that White-Steiner acted

7

negligently. *See Van Dox*, 214 Ariz. at 304 ¶ 16, 152 P.3d at 1187. A lawyer is "negligent" when she fails "'to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.'" *Id.* ¶ 17 (quoting *ABA Standards* at 12). In contrast, "knowledge" requires "'the conscious awareness of the nature or attendant circumstances of the conduct.'" *Id*. at 305 ¶ 21, 152 P.3d at 1188 (quoting *ABA Standards* at 12). Thus, for a lawyer's conduct to be knowing with regard to improperly handling client property, she must be consciously aware that her conduct does not conform to the requirements of ERs 1.15(a), 5.1, 5.3 and Arizona Supreme Court Rules 43 and 44. Between "knowing" and mere negligence, the *ABA Standards* identify another possible mental state: that the lawyer should know that her conduct is improper. ABA Standard 4.12.

¶ **16** There is a reasonable basis for the Hearing Officer's finding that White-Steiner's improper conduct involving her trust account and client property was negligent. The Hearing Officer considered testimony from White-Steiner, Mr. Steiner, and the law firm's paralegal. Based on this evidence, the Hearing Officer found that although White-Steiner was responsible for time slips and billing, Mr. Steiner was

8

responsible for managing the firm's trust account. The Hearing Officer also found that White-Steiner relied (although unreasonably) on her husband "in management of Trust Account, its oversight and responding to the State Bar." Hearing Officer's Report, *In re White-Steiner*, No. 06-0796, at 25 (Mar. 3, 2008). In addition, the Hearing Officer concluded that "Mr. Steiner ostensibly the manager of the Trust Account process was absent from the practice and did not do his job. Respondent's conduct was not intentional, but was severely deficient and negligent." *Id.*

¶ 17    The Hearing Officer rejected the State Bar's argument that White-Steiner should have known of the trust account problems because she and her husband had received informal reprimands for violating some of the same ethical rules in 2001 and she also knew that her husband had participated in LOMAP. The Hearing Officer could have reasonably concluded that neither the 2001 informal censure (which the State Bar had then described as resulting in part from an ambiguity in the law firm's fee agreement regarding where funds would be deposited) nor Mr. Steiner's LOMAP participation, which he successfully completed in 2002, established that White-Steiner should have known in 2006 that her firm was violating rules regarding trust accounts and client property. Moreover, the Hearing Officer

made no finding that these prior disciplinary actions involved "similar conduct" or that they put White-Steiner "on notice" that she was improperly dealing with client funds or mismanaging her trust account.

¶ 18     Were we engaged in initial fact-finding, we might agree with the Disciplinary Commission that White-Steiner knew or should have known of the identified violations. The Hearing Officer's finding that White-Steiner acted negligently, however, must be accepted on review because it has a reasonable basis in the record. *See Van Dox*, 214 Ariz. at 305 ¶ 19, 152 P.3d at 1188.

### 3.    Actual or Potential Injury

¶ 19     We must also determine whether the ethical violations resulted in harm to clients. The Hearing Officer found that White-Steiner's actions caused actual harm because she paid a client's debt with other clients' funds, although the Hearing Officer did not identify an injury to any particular client. The finding of injury, which White-Steiner does not contest, has a reasonable basis inasmuch as the failure to deposit sufficient personal funds to pay bank service fees and the issuance of the insufficient funds check meant that one client's debts were paid with trust account monies properly belonging to other clients.

### 4. Presumptive Sanction

¶ 20    The *ABA Standards* identify presumptive sanctions for violations of duties owed to clients.  In cases involving the failure to preserve client property, ABA Standard 4.13 provides that a "reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."  ABA Standard 4.12 provides that suspension is appropriate when a lawyer causes such injury and "knows or should know that [s]he is dealing improperly with client property."  The commentary to ABA Standard 4.13 further observes that suspension or even disbarment may be appropriate for lawyers who are grossly negligent in failing to establish proper accounting procedures.  The same commentary explains that a reprimand (which would include a censure under Arizona's disciplinary procedures) is appropriate when a lawyer fails to follow his or her accounting procedures or is negligent in training or supervising office staff concerning proper procedures in handling client funds.

¶ 21    Having found that White-Steiner acted negligently, the Hearing Officer concluded that under ABA Standard 4.13 a censure is the presumptive sanction.  The State Bar does not dispute that this is the appropriate sanction for negligent violations, but instead argues that suspension is the presumptive standard

11

under ABA Standard 4.12 because White-Steiner should have known she was dealing improperly with client property or she was at least grossly negligent.

¶ 22        We agree with the Hearing Officer that ABA Standard 4.13 applies and that censure is the presumptive sanction. The State Bar's argument that White-Steiner should have known that she was dealing improperly with client property or that she acted with gross negligence is unavailing given the Hearing Officer's finding that she acted negligently. Although the evidence might have supported a finding that White-Steiner acted with gross negligence, the State Bar did not even urge the Hearing Officer to make such a finding in its proposed findings of fact. We decline to make such a finding de novo on review.

### 5.    Aggravating and Mitigating Factors

¶ 23        Having identified censure as the presumptive sanction, we next consider whether any aggravating or mitigating circumstances negate the presumption. *See Peasley*, 208 Ariz. at 36 ¶ 36, 90 P.3d at 773. ABA Standards 9.2 and 9.3 list aggravating and mitigating factors to be considered in determining appropriate sanctions. The Hearing Officer found two aggravating factors - prior disciplinary action, ABA Standard 9.22(a), and refusal to acknowledge wrongful nature of conduct, ABA Standard 9.22(g) - and two mitigating factors -

absence of dishonest or selfish motive, ABA Standard 9.32(b), and character and reputation, ABA Standard 9.32(g). The Disciplinary Commission agreed with the Hearing Officer's findings in this regard, and neither White-Steiner nor the State Bar contests them on appeal. We accept the Hearing Officer's findings of aggravating and mitigating factors and conclude that they do not alter the presumptive sanction.

## B. Proportionality Review

¶ 24 We also will consider similar cases to assess what sanctions are proportionate to the improper conduct. *Van Dox*, 214 Ariz. at 307 ¶ 39, 152 P.3d at 1190. White-Steiner argues that other cases involving negligent trust account violations have resulted in censure combined with probation. The State Bar does not contend that such discipline would be disproportionate as compared to other cases in which the respondent acted negligently; nor have we identified any such cases.

## C. Appropriate Sanction

¶ 25 We review de novo the appropriate sanction for violations of the Rules of Professional Conduct and Supreme Court Rules. *See In re Walker*, 200 Ariz. 155, 160 ¶ 20, 24 P.3d 602, 607 (2001). Although we consider the recommendations of the Hearing Officer and the Disciplinary Commission, this Court is ultimately responsible for determining the appropriate

13

sanction.  *Peasley*, 208 Ariz. at 33 ¶ 23, 90 P.3d at 770.

### III. CONCLUSION

¶ **26**      Based on the facts as found by the Hearing Officer, ABA Standard 4.13, and our proportionality analysis, we conclude that an appropriate sanction is a censure combined with two years probation, which shall include participation by White-Steiner in LOMAP and the State Bar's Trust Account Program and Trust Account Ethics Enhancement Program.


_____
W. Scott Bales, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice