864 P.2d 1052

**In the Matter of A Member of the State Bar of Arizona, Harry J. LENABURG, Respondent.**

**No. SB–93–0068–D.**
**Comm. Nos. 90–0534, 90–0895, 91–1130 and 91–0542.**

Supreme Court of Arizona.

Dec. 13, 1993.

Mark I. Harrison, Stephen G. Montoya, for respondent.

Nancy A. Greenlee, State Bar Counsel.

Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed before the Court,

IT IS ORDERED, ADJUDGED AND DECREED that HARRY J. LENABURG, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against HARRY J. LENABURG for costs incurred by the State Bar of Arizona in the amount of $837.56, together with interest at the legal rate from the date of this judgment.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION

OF THE

SUPREME COURT OF ARIZONA

In the Matter of Harry J. Lenaburg, a Member of the State Bar of Arizona, Respondent.

Comm. Nos. 90–0534, 90–0895, 91–1130 and 91–0542

SB–93–0068–D

*DISCIPLINARY COMMISSION REPORT*

Nov. 5, 1993.

This matter first came before the Disciplinary Commission of the Supreme Court

of Arizona on June 5, 1993, pursuant to Ariz. R.Sup.Ct., Rule 56(a), for review of the Hearing Committee's recommendation of acceptance of the agreement for discipline by consent providing for censure and probation. The Commission, by order filed July 26, 1993, rejected that recommendation and remanded the matter to the Hearing Committee for a hearing. On August 3, 1993, the State Bar filed a motion for reconsideration and request for oral argument. This matter again came before the Commission on September 11, 1993, for oral argument on the State Bar's motion.

### Motion for Reconsideration

After hearing oral argument of the State Bar and Respondent, a concurrence of the seven Commissioners present[1] granted the State Bar's motion to reconsider.

．　　．　　．

### Decision on the Merits

■ A concurrence of the seven Commissioners present accepts the Hearing Committee's recommendation that the agreement for discipline, providing for censure and a two-year probation, be accepted. The Commission unanimously adopts the conclusions of law of the Hearing Committee and adopts the tender of admissions and agreement for discipline by consent as its findings of fact.

### Facts

The complaint in this matter contains four counts, all of which concern Respondent's failure to uphold his responsibilities as the managing attorney for a law firm (the "Firm"). Respondent became the managing attorney in June 1988.

Mr. and Mrs. A retained the Firm in November 1986 to defend them in a lawsuit with a remodeling company. These clients also wanted to file a counterclaim against the remodeling company. Mr. and Mrs. A stressed that time was of the essence in handling this matter, because insolvency of the remodeling company was probable. Over the next three and a half years, Mr. and Mrs. A wrote a number of letters to the Firm, complaining about the delay, stating that their case had been handed to six different attorneys over this time period.

Respondent was given copies of these letters from Mr. and Mrs. A when he became managing attorney. However, Respondent did not contact the couple to attempt to resolve the problems they were having, and did not adequately supervise the associates handling the case to ensure they were complying with their ethical obligations to Mr. and Mrs. A.

Client B retained the Firm in September 1989 regarding the collection of a post-decree judgment against her former husband. Associate X was assigned to handle her case. Thereafter, the ex-husband's counsel asked Respondent to investigate Associate X's handling of the case, as he believed the lawsuit filed by Associate X was frivolous.

In response, Respondent met with Associate X and another member of the Firm, a California attorney who was not licensed to practice law in Arizona. Respondent relied upon the opinion of the California attorney in determining that Associate X's handling of the matter was proper. Subsequently, the court found that the lawsuit was frivolous, imposed sanctions against Associate X, and dismissed Client B's action.

Mr. and Mrs. C had a consultation with the Firm in September 1990 regarding filing a joint bankruptcy. They were told the retainer fee would be $710. Mr. and Mrs. C paid the retainer on April 15, 1991. Four days later, the Firm informed the couple that it no longer handled bankruptcy work. They were told that the Firm would refund all of the retainer, with the exception of the $150 non-refundable file set-up fee. When Mr. and Mrs. C did not receive any refund within two months, they contacted Respondent, who told them he would check into the matter and

---

1. Commissioners Bonwell, Bosse, and Doyle did not participate in these proceedings. P. Michael Drake, of Tucson, participated as an ad hoc member.

report back to them. Respondent did not contact Mr. and Mrs. C again.[2]

Client D retained the Firm to handle the probate of her father's estate. Associate X was assigned to handle the matter. In February 1990 Respondent received a copy of a letter from Client D complaining about Associate X's inaction. Respondent spoke to both the Client and Associate X, and directed Associate X to transfer the file to another attorney within the Firm who had probate experience. Respondent did not follow up with Associate X and, therefore, did not learn that the file had been transferred to an attorney at another firm. Neither did Respondent follow up with Client D to ascertain if she was satisfied with her representation.

Respondent and the State Bar have conditionally admitted that Respondent's conduct was in violation of ER 1.4, ER 1.16(d), and ER 5.1.

### Discussion of Decision

The Committee and Commission agree that Respondent violated the following ethical rules:

1. ER 1.4, when he failed to contact Mr. and Mrs. A concerning their difficulties with the Firm, failed to report back to Mr. and Mrs. C concerning their refund, and failed to follow up with Client D to ensure that she was satisfied with her representation;

2. ER 1.16(d) when he failed to ensure that Mr. and Mrs. C had received a refund of the retainer they had paid; and

3. ER 5.1 by failing to make reasonable efforts to ensure that the conduct of the lawyers in the Firm relating to Mr. and Mrs. A, Client B, and Client D conformed to the rules of professional conduct.

Respondent must be held responsible for his own misconduct, which led to this complaint. However, the Commission believes that the policies in place at the Firm contrib-

uted greatly to Respondent's misconduct; the position of Arizona managing attorney carried with it too many responsibilities.

Prior to 1990, the Firm handled virtually all areas of the law.[3] Respondent's role, as managing attorney, was to oversee all of the branch offices and personnel in both Phoenix and Tucson. To do this, Respondent had to meet with each branch office regularly and handle any problems that were present. Another of Respondent's responsibilities was to manage the cases of any attorney who had left, until another attorney was hired or the cases were transferred to another branch. Because of the nature of the practice and the large volume of cases handled in each office, turnover of personnel in the offices was relatively high. Respondent's failure to maintain adequate communication and to adequately supervise the attorneys at the Firm was not an indication that he was less than diligent in pursuing these responsibilities; rather, it was an indication that the responsibilities the Firm had assigned to the position of managing attorney were simply too much for one person to handle. Respondent was overwhelmed by his workload.

While it may appear that Respondent should not be held responsible for his inability to shoulder the enormous workload given to him by the Firm, the Commission notes that is not the issue here. There is a difference between responsibility to an employer and responsibility as a lawyer. Respondent probably did uphold his responsibility to the Firm; he did not, however, fulfill the responsibility he held as a lawyer to maintain his ethical obligations.

Our Supreme Court has found that the American Bar Association's *Standards for Imposing Lawyer Sanctions* provide excellent guidance for determination of an appropriate sanction. *See, e.g., Matter of Petrie,* 154 Ariz. 295, 742 P.2d 796 (1987).

Respondent's failure to maintain adequate communication with three clients of the Firm

---

2. During the course of these disciplinary proceedings, Respondent refunded the money to Mr. and Mrs. C.

3. Since that time, the Firm has restricted itself to handling only personal injury cases.

can be considered lack of diligence, which is addressed by Standard 4.4. Standard 4.43 provides for reprimand (censure in Arizona) when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Standard 4.42 provides for suspension when a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect, and causes injury or potential injury to a client. Respondent's conduct evidenced a pattern of neglect, as it affected four clients. In making its recommendation of censure and probation, rather than suspension, the Commission seriously considered the unique circumstances giving rise to that neglect.

Standard 7.0 addresses violations of duties owed as a professional. Standard 7.3 provides for censure when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system. As stated above, the Commission finds that Respondent's failure to communicate with the three clients was negligent, rather than intentional. The Commentary to this Standard states that the courts have imposed censures on lawyers who are negligent in supervising employees. It further states that a public censure will help to educate the respondent and deter future violations.

The Commission also reviewed Standards 9.22 and 9.32 on aggravation and mitigation. These are the factors that may justify an increase or decrease in the sanction to be imposed. Present in mitigation are absence of a dishonest or selfish motive, full and free disclosure during and cooperative attitude toward the disciplinary proceedings, and remorse.[4]

■ Present in aggravation are pattern of misconduct, multiple offenses, substantial experience in the practice of law, and prior misconduct. Respondent has previously been informally reprimanded three times for conduct which occurred during the same time period as the present matter. Each of those cases also concerned problems Respondent encountered as managing attorney of the Firm. The presence of three prior disciplinary offenses, particularly when imposed for similar conduct, usually indicates that an increase in the sanction is appropriate. The Commission notes, however, that the purpose of lawyer discipline is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). The Commission believes that, in this instance, the appropriate response to those three prior sanctions is to impose the probationary terms detailed herein. It is these terms, rather than a period of suspension for Respondent, which the Commission believes address the core of the problem, and will prevent these same incidents from recurring.

It is apparent to the Commission that Respondent handled his responsibilities at the Firm as best he could. However, there is no doubt that some of those responsibilities were not met, as evidenced by the instances detailed here. While the Commission does not excuse Respondent for failing to uphold all of his ethical responsibilities, it does understand the quandary in which Respondent was placed. Respondent could have avoided his own misconduct by quitting his job; however, that would not have eliminated the problem. Rather, it would most likely have meant that some other attorney would now be before the Commission. The Commission believes the heart of the problem here is the policies and procedures of the Firm. The Commission believes that a censure, combined with the following probationary terms, some of which require the cooperation and involvement of the Firm, and with which the Firm has agreed to comply, will get to the heart of the problem.

---

4. In its order of remand, the Commission stated it saw no indication of remorse in the record on appeal. However, after consideration of the State Bar's subsequent motion for reconsideration and hearing oral argument of both the State Bar and Respondent, the Commission finds that Respondent is remorseful.

## Probation

Respondent shall be placed on probation for a period of two years, effective as of the date of the order of the Supreme Court of Arizona, under the following terms and conditions:

1. Respondent shall commit no ethical violations during the probationary period; [5]

2. Respondent will submit to and cooperate with an audit of his law practice and that of his firm's by Ezra Tom Clark, in cooperation with the director of the Law Office Management Assistance Program ("LOMAP");

3. Respondent will submit to and cooperate with random audits of his law practice by Mr. Clark, the LOMAP director, or her designee, during the remaining probationary period;

4. Respondent and his firm will implement any and all reasonable suggestions made as a result of the initial audit or random audits; [6]

5. Respondent shall obtain a practice monitor who is acceptable to the State Bar. For the first six months of the probationary period, the practice monitor shall meet with Respondent on a monthly basis to review and discuss Respondent's case load. Thereafter, with the approval of the LOMAP director or her designee, the frequency of these meetings may be decreased to every other month. During the entire probationary period, the practice monitor shall submit quarterly written reports to the State Bar;

6. Respondent shall pay all costs incurred as a result of the probationary terms; and

7. Compliance with all terms of probation is to be reported by Respondent to the State Bar.

---

5. This term is intended to include any findings that ethical violations occurred during the probationary term. The mere filing of a bar complaint or charge against Respondent during the term of probation would not constitute a violation.

6. If there is a dispute about the reasonableness of the audit suggestions, the parties will submit the issue to the Hearing Committee for resolution. The term "reasonable" refers to such matters as the cost involved, the amount of effort and time which implementation of the suggestion would require, and similar considerations.

/s/ Mark D. Rubin
Mark D. Rubin, Vice Chairman
Disciplinary Commission