SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of a Member of the State Bar of Arizona, | ) Arizona Supreme Court<br>) No. SB-10-0036-D<br>) |
| JEFFREY PHILLIPS,<br>Attorney No. 13362 | ) Disciplinary Commission<br>) Nos. 05-1161, 05-1888<br>)　　　06-1137, 06-1138<br>)　　　06-1212, 06-1582<br>)　　　07-0085, 07-0176<br>)　　　07-0177, 07-0178<br>)　　　07-0231, 07-0232<br>)　　　07-0239, 07-0275<br>)　　　07-0278, 07-0289<br>)　　　07-0412, 07-0512<br>)　　　07-0569, 07-0628<br>)　　　07-0639, 07-0697<br>)　　　07-0887, 07-0889<br>)　　　07-0890, 07-0891<br>)　　　07-0892, 07-0894<br>)　　　07-0895, 07-1326<br>)　　　07-1342, 07-1461<br>)　　　07-1561, 07-1601<br>)　　　07-1885, 08-0397 |
| Respondent. | )<br>)<br>) **O P I N I O N**<br>) |

Disciplinary Action from the Disciplinary Commission

**SUSPENSION AND PROBATION ORDERED**

_____

| | |
|---|---|
| OSBORN MALEDON PA | Phoenix |
| By　Mark I. Harrison<br>　　Sara S. Greene<br>　　Mark Hummels<br>Attorneys for Jeffrey L. Phillips | |
| | |
| STATE BAR OF ARIZONA | Phoenix |
| By　Steve Little<br>Attorneys for State Bar of Arizona | |

_____

**P E L A N D E R**, Justice

¶1      We granted review in this attorney disciplinary case to determine whether the Hearing Officer erroneously used a vicarious liability standard in finding that Petitioner Jeffrey Phillips violated Arizona Rules of Professional Conduct ("ERs") 5.1(a) and 5.3(a), and whether the recommended suspension of six months and one day was appropriate.  Although we accept the Hearing Officer's determination that Phillips violated ERs 5.1(a) and 5.3(a), we reduce the suspension to six months.

## I. Facts and Procedural Background

¶2      Phillips is the founder and managing attorney of Phillips & Associates ("P&A"), a large law firm based in Phoenix.  A self-styled "consumer law firm," P&A handles a high volume of cases, having represented approximately 33,000 clients between 2004 and 2006.  At the time of the disciplinary proceedings, P&A employed 250 people, including thirty-eight lawyers.  The firm's practice was limited to criminal defense, bankruptcy, and personal injury.

¶3      Phillips no longer represents clients, but instead supervises and manages the firm.  His duties include setting firm policy on billing, accounting, and intake procedures. Although Phillips has general control over the firm, during the relevant period he had delegated primary responsibility for the

2

criminal division to Robert Arentz, and for the bankruptcy division to Robert Teague.

**¶4**    In 2002, Phillips was the subject of disciplinary proceedings resulting in his conditionally admitting to violations of ERs 5.1, 5.3, and 7.1, and agreeing to a censure and two years' probation. The judgment and order entered in 2002 included detailed probationary terms relating to the management of P&A. Those terms required specific changes to P&A's intake procedures, accounting procedures, and ethics training. Among other things, the 2002 order required the following:

> Prior to entering into a written attorney/client agreement for the firm, an Arizona licensed attorney must speak with the client and approve the legal fees to be charged and retention of the Firm [sic] by the client.
>
> . . .
>
> Bonuses paid to intake personnel cannot be based exclusively on either the number of clients who retain the firm or on the amount of fees received from those clients. The criteria for determining bonuses must be provided to the intake personnel in writing.
>
> . . .
>
> All attorneys and other billable staff members who work on criminal cases shall keep contemporaneous time records to enable the firm to conduct a "backward glance" at the conclusion of a case in order to determine whether a refund is due.
>
> . . .

> The firm shall provide a written accounting of time spent and fees incurred within 15 days of a request by a client. When a client terminates the firm's representation in a criminal case and the firm has been permitted to withdraw by the court, the firm shall, within fifteen (15) days following receipt of the Order permitting withdrawal, provide to the client a written accounting of the time spent, fees incurred, and when appropriate, a refund of unearned fees.

Phillips successfully completed his probation in 2004.

¶5 Between August 2006 and May 2008, the Bar issued a series of probable cause orders against Phillips and Arentz. The Bar filed a formal complaint against them in October 2007 and, after several amendments, ultimately charged twenty-two counts, alleging violations of ERs 1.1, 1.2, 1.3, 1.4, 5.1, 5.3, 7.1, and 8.4.

¶6 A hearing was held over eleven days in 2008. The Hearing Officer heard testimony from many witnesses, including former P&A clients, current and former P&A attorneys, and experts for both Phillips and the Bar.

¶7 In detailed findings of fact, conclusions of law, and recommendations, the Hearing Officer found that Phillips had violated ERs 5.1(a), 5.3(a) and 7.1, and Arentz had violated ERs 5.1(a) and (b), 5.3(a) and (b), and 1.5(a). Phillips had a total of twelve ethical violations and Arentz had nineteen. The Hearing Officer found that all the clients involved in the matters giving rise to the allegations were unsophisticated. He recommended that Arentz be suspended for sixty days, and that

4

Phillips be suspended for six months and one day. The Hearing Officer also recommended that Phillips and Arentz be placed on two years' probation upon reinstatement.

¶8 The Hearing Officer's findings regarding Phillips's ethical violations can be generally categorized as follows:

**A. Caseloads of Bankruptcy Attorneys**

¶9 The Hearing Officer found that Phillips violated ER 5.1(a) as alleged in Counts 3 and 4, which related to the caseloads of P&A's bankruptcy attorneys, each of whom carried as many as 500 cases at a time. A former P&A attorney testified that, upon joining the firm, she was immediately responsible for 540 cases. Counts 3 and 4 involved circumstances in which clients' needs were not met because of the high volume of cases assigned to bankruptcy attorneys. In both counts, the Hearing Officer also found that, because of the number of attorneys handling a given case, inadequate attention was paid to the problems presented in the case and the client was confused and not adequately informed.

¶10 Count 3 specifically involved a breakdown in communication between the attorney and the client, missed hearings by the attorney, and a failure to keep the client reasonably informed. Count 4 involved P&A's practice of having one attorney handle all of the firm's "341 meetings," which are short, informal meetings that debtors are required to attend

5

after filing a bankruptcy petition under Chapter 7 or Chapter 13 of the federal Bankruptcy Code. The P&A attorney handled forty files per day and at times would have six to seven 341 meetings within thirty minutes. Count 4 included a client's complaint that a P&A attorney had missed a 341 meeting and failed to act with reasonable diligence. The Hearing Officer concluded that Phillips violated ER 5.1(a) in both counts for establishing and maintaining a business model in which such ethical violations were likely to occur.

## B. Intake and Retention Procedures

¶11 Another category of violations related to P&A's intake and retention procedures. Prospective clients who visit the firm's offices do not immediately meet with an attorney. Instead, they are provided a blank fee agreement and a general questionnaire. After completing the questionnaire, the prospective client meets with a P&A legal administrator, a nonlawyer tasked with retaining clients. Legal administrators are paid a base salary and monthly bonuses, based in part on the number of cases that the legal administrator retains. After obtaining general information from the client, the legal administrator meets with a lawyer who sets the fee. After the fee agreement is prepared, the client speaks with a lawyer to make sure the client understands the fee agreement, who the lawyer will be, and the scope of P&A's representation. The

6

Hearing Officer found that this process, known as "closing," was often not completed by an attorney knowledgeable in the relevant practice area.

¶12      On Counts 9, 12, and 17, the Hearing Officer found P&A's retention policies, as implemented, impeded potential clients from obtaining the information needed to make informed decisions about retention. With respect to Counts 9 and 12, the Hearing Officer found that a P&A legal administrator gave a client's family member unreasonable expectations about the representation, suggesting that the firm would be able to reduce the client's sentence in criminal proceedings.

¶13      In Count 9, the client's father was told that the firm should be able to reduce his son's sentence. An attorney signed a fee agreement describing the scope of the services as "mitigation of sentencing." The client, however, had already entered into a plea agreement with a stipulated sentence, and no one at P&A advised the client or his father of the unlikelihood of mitigating the sentence. Despite the client's expectations, the client's sentence was not reduced.

¶14      In Count 12, a client's mother signed a fee agreement after being told by a legal representative that the firm should be able to help reduce her son's sentence. As the firm was aware, however, the client had already stipulated to a particular sentence. The client's mother met with a bankruptcy

7

attorney, who did not know what a stipulated plea agreement was. A criminal attorney did not meet with her until the day of sentencing, when she was informed that her son would receive the sentence stipulated in the plea agreement.

¶15        The Hearing Officer found that Phillips and Arentz violated ERs 5.1(a) and 5.3(a) in both counts because the firm's retention practices did not require a knowledgeable attorney to speak with the potential client before entering into a fee agreement, and the firm used nonlawyers in its retention process.  Similarly, in Count 17, a client with a suspended driver's license met only with a bankruptcy attorney and a legal administrator before hiring P&A to represent him.  The client wanted to have his license reinstated but also had an unadjudicated DUI charge.  The scope of services set forth in the fee agreement did not match the client's expectations.  The firm did not follow the client's decisions regarding the scope of the representation, and the firm waited weeks before telling the client his driver's license could not be reinstated until the DUI charge was resolved.  The firm also failed to inform the client prior to retention that the firm could not accomplish his goals.  The Hearing Officer found that both Phillips and Arentz violated ER 5.1(a).

## C.  Conduct by Legal Administrators

¶16        The Hearing Officer also found violations of ER 5.3

arising from P&A's providing legal administrators with bonuses based, in part, on the number of clients retained. Count 8 involved a legal administrator who used "high pressure tactics" to attempt to dissuade a client from terminating P&A's representation. Count 19 involved a client who retained the firm for defense of a DUI charge and, as the firm was aware, was also in the process of becoming a United States citizen. When the client asked to terminate P&A's representation after meeting with a legal administrator and a bankruptcy attorney, the client was subjected to intimidation and false statements from a P&A employee. At one point, the employee warned the client that he was "looking to lose his citizenship," and the employee insinuated that if the client stopped payment on the retainer check, the firm could have the police investigate his immigration status. After making several unsuccessful attempts to obtain documents he had furnished to P&A, the client was only able to recover the papers after hiring new counsel.

¶17     Although the P&A employees' tactics violated P&A's policies, the Hearing Officer concluded that Phillips and Arentz violated ER 5.3(a) in both counts because legal administrators' bonuses were tied, in part, to client retention. These incentives provided "the motive for the misconduct." The words in the firm's policy manual prohibiting such conduct were insufficient to insulate managers and supervisors from ethical

9

responsibility when the actual ongoing practices were to the contrary.

**D. Refund Policy**

¶18    In Count 11, the Hearing Officer found that P&A employees failed to act promptly on a client's termination request. The firm took more than five months to refund money to the client despite repeated requests for a refund. The Hearing Officer found that both Arentz and Phillips violated ERs 5.1(a) and 5.3(a) for failing to have practices in place to prevent difficulty in obtaining a refund.[1]

**E. Disciplinary Commission Decision**

¶19    On review, pursuant to Rule 58, Arizona Rules of the Supreme Court, the Disciplinary Commission considered the parties' objections to the Hearing Officer's decision and held oral argument. In December 2009, by a vote of 6-2, the Commission adopted the Hearing Officer's findings of fact, conclusions of law, and recommendations. The two dissenting Commission members found no basis for disturbing the Hearing Officer's factual findings but concluded that "the recommended

---

[1] The Hearing Officer also found (in Count 20) that Phillips negligently violated ER 7.1 by writing and using a materially misleading television advertisement in 2007 regarding P&A's DUI defense services and a new DUI law. But the Hearing Officer found that violation did not "warrant significant discipline" because it was neither knowing nor actually injurious; rather, his recommended sanction was based solely on Phillips's knowing violations of ERs 5.1(a) and 5.3(a).

10

discipline is too severe" and that lesser sanctions were appropriate – suspensions of thirty days for Arentz and ninety days for Phillips.

¶20      Phillips and Arentz jointly petitioned for review. This Court granted review on only two discrete issues Phillips raised: whether the Hearing Officer erroneously applied a vicarious liability standard in finding ethical violations by Phillips, and whether the recommended sanction for him is appropriate.  We denied review of any issues raised by Arentz, thereby leaving undisturbed his sixty-day suspension.  The Bar did not file a cross-petition for review to challenge the recommended sanction for Arentz.   We therefore limit our discussion to the two issues regarding Phillips on which review was granted.

## II.  Managerial and Supervisory Liability

¶21      Phillips first argues that the Hearing Officer used an improper standard of vicarious liability in finding violations of ERs 5.1(a) and 5.3(a) because his analysis was based solely on the ethical breaches of other firm employees.  We disagree.

¶22      Ethical Rule 5.1(a) provides that a partner or an attorney with comparable managerial authority "shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct."  Similarly,

ER 5.3(a) provides that a partner or a lawyer with comparable managerial authority must make "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurances that" nonlawyers employed by the firm or associated with the lawyer comply with the professional obligations of the lawyer.

¶23    These duties require not only supervision, but also that the supervising attorney establish "internal policies and procedures" providing reasonable assurances that lawyers and nonlawyers in the firm conform to the Rules of Professional Conduct.  ERs 5.1 cmt. 2; 5.3 cmt. 2.  The size of the firm is relevant in determining what is "reasonable," and in a large firm such as P&A, "more elaborate measures may be necessary." ER 5.1 cmt. 3.

¶24    The rules imposing managerial and supervisory obligations, however, do not provide for vicarious liability for a subordinate's acts; rather, they "mandate an independent duty of supervision."  *In re Galbasini*, 163 Ariz. 120, 124, 786 P.2d 971, 975 (1990).  Nor is a supervising attorney of a nonlawyer assistant "required to guarantee that that assistant will never engage in conduct that is not compatible with the professional obligations of the lawyer."  *In re Miller*, 178 Ariz. 257, 259, 872 P.2d 661, 663 (1994).

¶25    The Hearing Officer expressly recognized these legal

12

principles in his decision and did not apply an incorrect vicarious liability standard when finding that Phillips violated ERs 5.1(a) and 5.3(a). Although he found on many of the counts that P&A attorneys' and staff members' conduct violated various ethical rules, the supervisory and managerial breaches for which Phillips was found liable under ER 5.1 or 5.3 were independent. For each violation of ER 5.1 or 5.3, the Hearing Officer found that Phillips had personally failed to engage in the required supervision of either lawyers or nonlawyer personnel. Indeed, on a number of counts (for example, Counts 5 and 6), the Hearing Officer found that someone at P&A had violated an ethical rule, but that Phillips had not personally violated the rules requiring supervision. Had the Hearing Officer or the Commission applied a vicarious liability standard, Phillips would have been held liable for those violations as well.

¶26 In contesting the findings that he violated ERs 5.1(a) and 5.3(a), Phillips refers to the "mountain of undisputed evidence" adduced at the hearing of P&A's supervisory efforts and the "relatively rare" occurrence of ethical breaches by other P&A employees. But the prior modification of firm policies, made pursuant to the 2002 judgment and order, did not alleviate Phillips's ongoing duty to ensure that his subordinates complied with the revised policies and ethical rules. Because the Hearing Officer clearly understood and

13

correctly applied the law by carefully not conflating vicarious liability with managerial and supervisory liability, we find no error in his determination, adopted by the Disciplinary Commission, that Phillips violated ERs 5.1(a) and 5.3(a).

### III. Sanction

¶27     We next address Phillips's argument that the recommended six-months and one-day suspension was disproportionate and excessive.  We review recommended sanctions de novo.  *In re White-Steiner*, 219 Ariz. 323, 327 ¶ 25, 198 P.3d 1195, 1199 (2009).  Although we independently review a recommended sanction, we give "serious consideration to the findings and recommendations" of the Commission.  *In re Pappas*, 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988) (citing *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985)).

¶28     "Attorney discipline serves to protect the public, the legal profession, and the legal system, and to deter other attorneys from engaging in unprofessional conduct."  *In re White-Steiner*, 219 Ariz. at 325 ¶ 9, 198 P.3d at 1197 (citing *In re Scholl*, 200 Ariz. 222, 227 ¶ 29, 25 P.3d 710, 715 (2001)).  Another purpose is to instill public confidence in the Bar's integrity.  *In re Horwitz*, 180 Ariz. 20, 29, 881 P.2d 352, 361 (1994) (citing *In re Loftus*, 171 Ariz. 672, 675, 832 P.2d 689, 692 (1992)).

¶29     In determining sanctions, we are guided by the

14

American Bar Association's *Standards for Imposing Lawyer Sanctions* (2005). *In re Van Dox*, 214 Ariz. 300, 303 ¶ 11, 152 P.3d 1183, 1186 (2007). Several factors are relevant in determining the appropriate sanction: (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the lawyer's conduct, and (4) the existence of aggravating or mitigating factors. *Id.* (citing ABA Standard 3.0). We may also consider any similar cases to assess what sanctions are proportionate to the unethical conduct. *Id.* at 307 ¶ 39, 152 P.3d at 1190.

## A. Duty Violated

¶30    ABA Standard 7.0 provides sanctions for violations of duties owed as a professional. The Hearing Officer and the Commission concluded that ABA Standard 7.0 governed this case because the violations of ERs 5.1 and 5.3 involved duties owed to the legal profession. Although these violations also implicate duties owed to the client, ABA Standard 7.0 will guide our analysis because we find no error on this point and because Phillips does not challenge the applicability of that standard. *See In re Lenaburg*, 177 Ariz. 20, 23, 864 P.2d 1052, 1055 (1993) (applying ABA Standard 7.0 to supervisory violations); *In re Rice*, 173 Ariz. 376, 377, 843 P.2d 1268, 1269 (1992) (same).

## B. Mental State

¶31    A lawyer's mental state affects the appropriate

15

sanction for ethical violations. Intentional or knowing conduct is sanctioned more severely than negligent conduct because it threatens more harm. *In re White-Steiner*, 219 Ariz. at 325 ¶ 13, 198 P.3d at 1197.

¶**32**    ABA Standard 7.0 provides the following guidelines with regard to sanctions:

> 7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
>
> 7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
>
> 7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

¶**33**    The Hearing Officer expressly found that both Phillips's and Arentz's violations of ERs 5.1 and 5.3 were "knowing." Although Phillips challenged that finding in his petition for review, we did not grant review of that issue and, therefore, accept as established that Phillips knowingly violated ERs 5.1(a) and 5.3(a).

## C.  Actual or Potential Injury

¶**34**    The Hearing Officer found actual injury in each of the

16

client-related counts. P&A clients were misled and improperly advised by unqualified lawyers, had difficulty obtaining refunds, and were misinformed about the reasonable objectives of the representation. Clients were also financially harmed, having paid unreasonable fees or retainers without a full understanding of the likely results of the representation. The record supports these findings.

**D. Aggravating and Mitigating Factors**

¶35        Because Phillips's knowing conduct caused actual injury to clients, we agree with the Hearing Officer that the presumptive sanction in this case is suspension. *See* ABA Standard 7.2. The Hearing Officer and the Commission found the following aggravating and mitigating factors apply to Phillips:

    Aggravating Factors
    (1)  Prior disciplinary offense
    (2)  Selfish motive
    (3)  Multiple offenses
    (4)  Refusal to acknowledge wrongful nature of conduct
    (5)  Vulnerability of victim
    (6)  Substantial experience in the practice of law

    Mitigating Factors
    (1)  Full and free disclosure to the Bar
    (2)  Delay in disciplinary proceedings
    (3)  Willingness to remedy practice
    (4)  Character

¶36        We find none of these findings clearly erroneous. And we agree with the Hearing Officer that the aggravating and mitigating factors, in conjunction with Phillips's knowing misconduct, further support suspension as an appropriate

17

sanction. *See In re Galbasini*, 163 Ariz. at 121, 125-26, 786 P.2d at 972, 976-77 (adopting recommended six-month suspension of attorney for knowingly failing to supervise nonlawyer employees who engaged in debt collection and improperly solicited clients in attorney's name); *Davis & Goldberg v. Ala. State Bar*, 676 So. 2d 306, 307-08 (Ala. 1996) (upholding two-month suspension of two partners for implementing policies designed to minimize expenses and maximize profits, to clients' detriment, when firm's practices resulted in unmanageable caseloads and permitted nonlawyers to perform legal services); *Att'y Grievance Comm'n of Md. v. Kimmel*, 955 A.2d 269, 292-94 (Md. 2008) (holding that violations of ethical rules requiring adequate supervision warranted a ninety-day suspension when attorneys had no prior disciplinary record).

**E.  Proportionality Review**

¶37     We may consider the sanctions imposed in similar cases "'to preserve some degree of proportionality, ensure that the sanction fits the offense, and avoid discipline by whim or caprice.'"  *In re Dean*, 212 Ariz. 221, 225 ¶ 24, 129 P.3d 943, 947 (2006) (quoting *In re Struthers*, 179 Ariz. 216, 226, 877 P.2d 789, 799 (1994)).  The Hearing Officer cited two cases for comparison purposes, but they are distinguishable and not very

18

helpful.[2]  Nor have the parties cited any authorities that bear on whether the recommended length of suspension is appropriate here.  Although we have sometimes engaged in comparative analysis, *see In re Van Dox*, 214 Ariz. at 307-08 ¶¶ 39-42, 152 P.3d at 1190-91, we agree with the Hearing Officer that this case, involving a "consumer law firm" and a high volume practice, is difficult to compare with others.  In any event, "[p]roportionality review . . . is 'an imperfect process'" that, as here, often provides little guidance.  *In re Dean*, 212 Ariz. at 225 ¶ 24, 129 P.3d at 947 (quoting *In re Owens*, 182 Ariz. 121, 127, 893 P.2d 1284, 1290 (1995)).

¶**38**      In assessing the duration of Phillips's suspension, however, we must also consider internal proportionality, in particular the length of his suspension in relation to Arentz's. We considered internal proportionality in *In re Dean*, 212 Ariz. at 225 ¶ 25, 129 P.3d at 947.  That case involved a romantic relationship between a prosecutor and a superior court judge. *Id.* at 221 ¶ 2, 129 P.3d at 943.  We reduced from one year to

---

[2] *See In re Lenaburg*, 177 Ariz. at 24, 864 P.2d at 1156 (imposing public censure with probation on attorney who negligently violated ER 5.1, causing lack of communication with clients and failure to refund fees in four separate cases); *In re Rice*, 173 Ariz. at 377, 843 P.2d at 1269 (imposing censure and probation on attorney with no prior disciplinary record who negligently failed to adequately supervise staff during firm's rapid expansion, resulting in sloppy office procedures and mismanagement).

19

six months the Commission's recommended suspension for the prosecutor in part because the judge had not been disciplined. *Id.* at 225 ¶ 25, 129 P.3d at 947. The prosecutor's ethical violations involved the same conduct as the judge's, and we concluded that a reduced sanction for the prosecutor was warranted to avoid a disparity in treatment. *Id.* Without minimizing the seriousness of the attorney's misconduct, we determined that "the interests of justice" required reconsideration of an otherwise suitable sanction. *Id.* Although the judge's immunity from lawyer discipline in that case had resulted inadvertently from this Court's prior action, *see id.*, the rationale employed there also applies here.

¶39 In this case, the Hearing Officer found, and the Commission affirmed, that Arentz had a total of nineteen ethical violations (eighteen of which were found to be knowing), compared to Phillips's twelve violations (eleven of which were found to be knowing). The Hearing Officer consistently found that Arentz, but not Phillips, violated subsection (b) of ERs 5.1 and 5.3 based on Arentz's having had direct supervisory authority of P&A's criminal department.[3] Arentz was also

---

[3] Ethical Rule 5.1(b) requires that a lawyer having direct supervisory authority over another lawyer make "reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." Similarly, ER 5.3(b) requires that a lawyer having direct supervisory authority over a nonlawyer make

20

directly involved in approving excessive fees, as alleged in Counts 8, 9, and 12, in violation of ER 1.5. In contrast, as the dissenting Commission members noted, the Hearing Officer did not find that Phillips had direct personal knowledge of any of the specific conduct giving rise to the allegations of ER 5.1 or 5.3 violations until after the conduct occurred. Yet Arentz received a suspension of only sixty days compared to Phillips's six-month and one-day suspension. Neither the Hearing Officer nor the Commission addressed or explained this disparity.

¶40 Moreover, a six-month and one-day suspension is not actually completed in that time period. Under Rule 65(a), Arizona Rules of the Supreme Court, any suspension exceeding six months requires the lawyer to go through formal reinstatement proceedings. That process extends the effective length of a suspension considerably. An applicant for formal reinstatement must provide an array of personal and financial information and prove by clear and convincing evidence his or her rehabilitation, compliance with all disciplinary orders and rules, fitness to practice, and competence. *See* Ariz. R. Sup. Ct. 65(a)-(b).

**F. Appropriate Sanction**

¶41 Although Arentz had more violations than Phillips and

---

"reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

21

was more directly involved in the underlying ethical violations of P&A employees in his department, we conclude Phillips's conduct and disciplinary history warrant a more severe sanction for him than Arentz received. Unlike Phillips, Arentz has no prior disciplinary record. We take Phillips's prior disciplinary record seriously, considering it involved the same type of supervisory shortcomings at issue here. The goal of attorney discipline is to protect the public. *In re Rivkind*, 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990). Neither the Hearing Officer nor the Commission erred in determining that the 2002 discipline did not adequately rehabilitate Phillips and was insufficient to protect P&A clients.

¶42     We also recognize that Phillips, as managing partner of a law firm representing more than 10,000 clients per year, was in a position of greater supervisory authority than Arentz. Phillips, not Arentz, had full power and control over P&A's policies and practices. As such, he was better able to effect positive change and insist on full compliance with ethics standards. Conversely, Phillips's lapses in these areas might potentially cause greater harm. Phillips's apparent delegation of responsibility and hands-off approach does not make his policies any less of a danger. Indeed, the decisions he makes directly affect the public, the profession, and the integrity of the legal system.

22

¶43     Although attorney partners and supervisors are not guarantors of their employees' conduct, they must take reasonable steps to ensure that firm practices, not merely policies, actually comply with ethical rules binding all lawyers practicing law in this state. Phillips's failure to do so, particularly in view of his disciplinary history, warrants a significant period of suspension followed by a lengthy probation term with strict conditions.

¶44     A longer suspension for Phillips is therefore justified. But we do not believe that a sanction at least six times harsher than Arentz's is proportional in this case.[4] Rather, as the two dissenting Commission members observed when recommending a ninety-day suspension for Phillips, a lesser sanction against him would appropriately address the violations

---

[4] Rule 64(e)(1), Arizona Rules of the Supreme Court, permits a lawyer who has been suspended for more than six months to apply for reinstatement no sooner than ninety days prior to the expiration of the suspension. Rule 65(b)(1), as amended this year and effective to reinstatement proceedings commencing after January 1, 2011, provides that a Bar hearing panel will hold a hearing within 150 days of the filing of the application. Within thirty days after completing the hearing, the hearing panel must file a report with this Court containing findings of facts and recommendations concerning the reinstatement. Ariz. R. Sup. Ct. 65(b)(3). The Court must "promptly" review the report and decide whether the applicant is qualified for reinstatement, a process that typically takes about two months. *Id.* at 65(b)(4). Thus, the reinstatement process for Phillips would, at the very least, last five to six months after his suspension is complete, effectively extending his suspension to a total of twelve months, six times longer than Arentz's suspension.

found here while deterring future misconduct and thereby protecting the public. We therefore reduce Phillips's suspension to six months. In doing so, we do not minimize the seriousness of Phillips's misconduct. But we believe a six-month suspension avoids an unjust disparity in treatment between him and Arentz.

¶45     The Hearing Officer and the Commission recommended that Phillips's two-year probation term and conditions of probation begin and take effect after Phillips's suspension is fully served. We accept that recommendation. Although Phillips is prohibited from practicing law or holding himself out as an active attorney during his suspension, he is permitted and strongly encouraged during that time to work with the Bar to immediately address the issues and rectify the problems that led to the violations of ERs 5.1 and 5.3 in this case. Otherwise, P&A would be left with many of its current problems and no immediate solution during Phillips's period of suspension.

¶46     During the suspension, however, Phillips's name may not be used in firm advertisements, letterhead, or other communications.[5] Nor is Phillips entitled to receive any income

---

[5] *See* ERs 5.5(b)(2); 7.1; 7.5(a) and (d); *see also* State Bar of Ariz. Comm. on Rules of Prof'l Conduct, Formal Op. 02-07 (2002) (concluding that a law firm should not continue to use attorney's name in the firm name, letterhead, business cards, or stationary while the attorney is on disability inactive status, and noting that "a suspended partner's name must be dropped in

24

generated by the firm during his suspension.[6]

¶47      In addition to reducing Phillips's suspension to six months, we remove from the Commission's recommended terms of probation term number 13, which would have permitted the Bar to send at random times unidentified "testers" to P&A to check the firm's compliance with required intake procedures. The Bar did not request that particular term and, at oral argument in this Court, acknowledged that it was not warranted. We adopt the Commission's probation terms in all other respects, as set forth in the appendix, as well as the restitution amounts it ordered.

### IV.  Conclusion

¶48      For the foregoing reasons, we modify the recommended length of Phillips's suspension, but otherwise accept the Commission's recommendations. The probation terms and

---

all communications with the public"); Wash. State Bar Ass'n, Formal Op. 196 (2000) (prohibiting use of suspended lawyer's name in firm name or business communications).

[6] *See* ER 5.4(a) ("A lawyer or law firm shall not share legal fees with a nonlawyer."); *Disciplinary Counsel v. McCord*, 905 N.E.2d 1182, 1189 (Ohio 2009) (concluding that lawyer's receipt of attorney fees while suspended from practice of law was improper and actionable as ethics violation); *Office of Disciplinary Counsel v. Jackson*, 637 A.2d 615, 620 (Pa. 1994) (noting a suspended attorney is a "'non-lawyer' within the meaning of the rules"); Comm. on Prof'l Ethics, State Bar of Tex., Op. 592 (2010) (prohibiting a lawyer from sharing legal fees with suspended attorney); *cf*. *West v. Jayne*, 484 N.W.2d 186, 190-91 (Iowa 1992) (allowing lawyer in breach of contract action against fellow associate to collect portion of fee, but suggesting that attorney would not be entitled to fees for any work done after he was suspended from practice of law).

conditions prescribed by the Commission as set forth in the appendix to this opinion shall apply.


_____
A. John Pelander, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Jon W. Thompson, Judge[*]


**W E I S B E R G**, Judge, concurring in part and dissenting in part

**¶49**        As the majority explains, the impact of a suspension of six months and one day is a great deal more than the impact of a suspension of only six months.  Here, however, even allowing for the subjectivity that creeps into the "imperfect process" when considering proportionality, I must respectfully dissent from the majority's decision to reduce Phillips's suspension from the six months and one day recommended by the

_____

[*] Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Jon W. Thompson, Judge of the Arizona Court of Appeals, Division One, was designated to sit on this matter.

Hearing Officer. I do so because, unlike the majority, I conclude that a six-month and one day suspension is internally proportionate to the two-months suspension meted out to Arentz.

¶50    The majority's conclusion is understandably not based on a general proportionality review. Not only is that approach no longer favored, but it is of little benefit here because Phillips's firm is a fairly unique "consumer" law firm with accordingly tailored practices. The disciplinary cases referenced by the parties are just not comparable enough to be helpful.

¶51    In this case, it is enough that Phillips's violations are the sort for which the relevant ABA Standard mandates a suspension. Specifically, ABA Standard 7.2 provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." Phillips's conduct clearly falls within that described by the ABA Standard. I therefore consider next whether Phillips's recommended suspension of six months and one day would be proportionate to Arentz's two months. I conclude it would.

¶52    To begin, Phillips is not being sanctioned for his second ethics violation. He is being sanctioned for his ethics violations eighteen through twenty-nine. I am not aware of any

27

other attorney in Arizona who has committed twenty-nine violations and received only a six-month suspension for his twenty-ninth. While Arentz was arguably punished too lightly for having committed nineteen violations, and Phillips's latest violations number twelve, Phillips had committed seventeen earlier violations. This comparison alone supports the recommended six months and one day suspension.[7]

¶53 Second, Arentz's sanction consisting of a two-month suspension and two years of probation represents his first such sanction. It is to be hoped and presumed that this sanction will be sufficient to prevent further violations by him. Phillips, on the other hand, was punished for his earlier violations and completed that probationary period. Unfortunately, he has reoffended multiple times. Thus, a greater penalty that includes a six-month and one day suspension is both warranted and proportionate.

¶54 Finally, Arentz committed his ethical violations while working in a system that was developed, implemented, and supervised by Phillips. It was Phillips's decision as to what P&A resources would be devoted to meet its attorneys' ethical responsibilities to their clients. He clearly did not attach

---

[7] I also note that these most recent twelve violations of Phillips involved separate complaints by nine of P&A's clients, while Arentz's complaints involved only six clients.

28

sufficient importance to those ethical responsibilities. As the attorney in sole charge of P&A, his fault was therefore far greater than that of Arentz.

¶**55** For the foregoing reasons, and although I concur with all else in the majority's opinion, I must respectfully disagree with its decision to reduce the period of Phillips's suspension.

_____
SHELDON H. WEISBERG, Judge[*]

---

[*] Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Sheldon H. Weisberg, Judge of the Arizona Court of Appeals, Division One, was designated to sit on this matter.

**APPENDIX**

1.    Phillips shall refrain from engaging in any conduct that would violate the Rules of Professional Conduct or other rules of the Supreme Court of Arizona.

2.    Phillips shall contact the director of LOMAP within thirty (30) days from the filing date of this opinion and shall schedule and submit to a LOMAP audit within forty-five (45) days thereafter.  Following the audit, the director of LOMAP shall formulate and include recommendations based on the audit in a Probation Contract to be executed and implemented by Phillips. The director of LOMAP shall also monitor the terms of probation.

3.    Before entering into any written attorney/client fee agreement for the firm, an Arizona licensed attorney must speak with the client and approve the legal fees to be charged and retention of the firm by the client.  The attorney meeting with the potential client must be knowledgeable in the practice area, and issues that relate to the retention and retention decision must be discussed before a decision is made on the retention. Retention attorneys shall review all paperwork and ensure that appropriate information is given to the client even if the client lacks the sophistication or knowledge to ask the right questions.

4.    Any nonlawyer personnel conducting initial consultations with clients must clearly and affirmatively identify themselves as nonlawyers to prospective clients.

5.    Respondent shall ensure that nonlawyer staff shall not give legal advice to clients and shall not make predictions or guarantees as to the outcome of a case.

6.    Standard intake forms including a standard fee agreement shall be utilized.  The firm shall participate in fee arbitration whenever it is requested by the client and the firm has been unable to resolve the dispute directly with the client.

7.    A standardized training manual for intake procedures shall be provided to each intake employee.

8.    Pursuant to ER 5.3, Phillips or other attorneys with supervisory authority in the firm (over whom Phillips has direct control) will be responsible for compliance by all intake personnel and nonlawyer staff with applicable ethical rules.

9. When accepting payment of a client's fees in a form other than cash, the firm shall not accept payment without signed, written consent (which may be evidenced by a check, electronic signature, credit card authorization, or other writing) from the party making the payment.

10. A one-time ethics training program, not to exceed three (3) hours, shall be given to all administrative staff including intake and collection personnel. The program shall be provided by the director of LOMAP or designee, and shall be given at a time within the first six (6) months of the probationary terms and in a manner that does not disrupt the firm's practice. The program may be repeated or additional programs may be given during the probationary period if needed as determined by the director of LOMAP. The initial program shall be taped and shown to any new personnel hired during the probationary period.

11. A one-time Continuing Legal Education ethics program, not to exceed three (3) hours, shall be given to all attorneys employed by Phillips's firm. The program shall be provided by the director of LOMAP or designee, and shall be given at a time within the first six (6) months of the probationary period and in a manner that does not disrupt the firm's practice. The program may be repeated or additional programs may be given during the probationary period. The initial program shall be taped and shown to any new lawyers hired during the probationary period.

12. The firm shall utilize a fee review process, consistent with *In re Swartz*, 141 Ariz. 266, 686 P.2d 1236 (1984), and ER 1.5, at the conclusion of all cases in order to determine whether a refund is due. All attorneys and other billable staff members who work on criminal cases[8] shall keep contemporaneous time records to enable the firm to conduct a "backward glance" at the conclusion of a case in order to determine whether a refund is due.

13. The firm shall provide a written accounting of time spent and fees incurred within fifteen (15) days of request by a client. When a client terminates the firm's representation in a criminal case and the firm has been permitted to withdraw by the

---

[8] The record indicates that P&A has sold its criminal department. Assuming that P&A no longer offers services in criminal law, this term and others relating to P&A's criminal department no longer apply.

court, the firm shall, within fifteen (15) days following receipt of the Order permitting withdrawal, provide to the client a written accounting of time spent, fees incurred, and when appropriate, a refund of any unearned fees.

14. If Phillips's firm uses client testimonials in advertisements, the client must acknowledge in writing that he or she is not receiving any money benefit (or the equivalent) for the appearance.

15. Phillips shall develop a system in which he is promptly advised of all client complaint(s) against the firm or lawyers employed by the firm, which implicate the provisions of ERs 5.1 and 5.3. Phillips shall document, in writing, his or the firm's response to each such complaint, and shall maintain a file of such complaints and responses.

16. Phillips shall make reasonable and good faith efforts to ensure compliance with these probation terms and shall respond directly or through his counsel to inquiries concerning the implementation and compliance with these probationary terms.

17. Before conducting a screening investigation into any new complaint(s) relating to practices covered by these terms and conditions of probation, the State Bar, when appropriate and consistent with its normal practice, will first attempt to resolve the complaint(s) through A/CAP and Central Intake, or will, when appropriate, consistent with its normal practice and pursuant to Rule 54(b)(1), Arizona Rules of the Supreme Court, refer the matter for mediation. Nothing in this paragraph is intended to limit the jurisdiction or power of the State Bar disciplinary agency.

18. Bonuses to legal administrators shall not be based, in whole or in part, on the number of clients retained, the amount of fees generated, the number of clients who cancel, or the amount of fees refunded.

19. The firm shall keep accurate records for all work done on a case.

20. Phillips shall pay all costs incurred as a result of these probationary terms.

21. In the event that Phillips fails to comply with any of the foregoing conditions and the State Bar receives information thereof, bar counsel shall file with the imposing entity a

32

Notice of Non-Compliance, pursuant to Rule 60(a)(5), Arizona Rules of the Supreme Court. The Hearing Officer shall conduct a hearing within thirty (30) days after receipt of said notice, to determine whether the terms of probation have been violated and whether an additional sanction should be imposed. In the event there is an allegation that any of these terms have been violated, the burden of proof shall be on the State Bar of Arizona to prove noncompliance by a preponderance of the evidence.